**SUMM**
Todd L. Bice, Esq., Bar No. 4534
Jordan T. Smith, Esq., Bar No. 12097
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, NV 89101
Telephone:  702.214.2100
Facsimile:  702.214.2101

Attorneys for Plaintiffs

DISTRICT COURT

CLARK COUNTY, NEVADA

| | |
|---|---|
| BGC PARTNERS, INC.,<br>G&E ACQUISITION COMPANY, LLC,<br>And BGC REAL ESTATE OF NEVADA,<br>LLC,<br><br>                Plaintiff(s),<br><br>        -vs-<br><br>AVISON YOUNG (CANADA) INC.,<br>AVISON YOUNG (USA) INC., AVISON<br>YOUNG-NEVADA, LLC, MARK ROSE,<br>THE NEVADA COMMERCIAL GROUP,<br>JOHN PINJUV and JOSEPH KUPIEC,<br>DOES 1 through 5; and ROE BUSINESS<br>ENTITIES 6 through 10<br><br>                Defendant(s). | CASE NO.   A714490<br><br>DEPT. NO.  XI<br><br>SUMMONS TO JOSEPH<br>KUPIEC |

**SUMMONS - CIVIL**

**NOTICE!  YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU
WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS.
READ THE INFORMATION BELOW.**

**TO THE DEFENDANT(S):** A civil Complaint has been filed by the Plaintiff(s) against

you for the relief set forth in the Complaint.

    1.    If you intend to defend this lawsuit, within 20 days after this Summons is

        served on you, exclusive of the day of service, you must do the following:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(a) File with the Clerk of this Court, whose address is shown below, a formal written response to the Complaint in accordance with the rules of the Court, with the appropriate filing fee.

(b) Serve a copy of your response upon the attorney whose name and address is shown below.

2.     Unless you respond, your default will be entered upon application of the Plaintiff(s) and failure to so respond will result in a judgment of default against you for the relief demanded in the Complaint, which could result in the taking of money or property or other relief requested in the Complaint.

3.     If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

4.     The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators each have 45 days after service of this Summons within which to file an Answer or other responsive pleading to the Complaint.

STEVEN D. GRIERSON
CLERK OF COURT

Submitted by:

By: _____
    Deputy Clerk        Date

_____

                             TERRI STRINGER
Regional Justice Center
200 Lewis Avenue
Las Vegas, NV 89155     MAR 0 4 2015

**NOTE: When service is by publication, add a brief statement of the object of the action. See Nevada Rules of Civil Procedure 4(b).**

3

# BUSINESS COURT CIVIL COVER SHEET

_____ County, Nevada

Case No. _____
_(Assigned by Clerk's Office)_

A- 15- 714490- B

XI

## I. Party Information _(provide both home and mailing addresses if different)_

| | |
|---|---|
| Plaintiff(s) (name/address/phone): | Defendant(s) (name/address/phone): |
| BGC PARTNERS, INC.; G&E ACQUISITION COMPANY, LLC; | AVISON YOUNG (CANADA) INC. AVISON YOUNG (USA), INC. |
| BGC REAL ESTATE OF NEVADA, LLC | AVISON YOUNG-NEVADA, LLC; MARK ROSE; THE NEVADA |
| | COMMERCIAL GROUP; JOHN PINJUV and |
| | JOSEPH KUPIEC |
| Attorney (name/address/phone): | Attorney (name/address/phone): |
| Todd L. Bice, Esq., #4534, Pisanelli Bice PLLC | |
| 400 South 7th Street, Suite 300, Las Vegas, NV 89101 | |
| 702-214-2100 | |

## II. Nature of Controversy _(Please check the applicable boxes for both the civil case type and business court case type)_

☐ Arbitration Requested

| Civil Case Filing Types | | Business Court Filing Types |
|---|---|---|
| **Real Property** | **Torts** | **CLARK COUNTY BUSINESS COURT** |
| Landlord/Tenant | Negligence | ☐ NRS Chapters 78-89 |
| ☐ Unlawful Detainer | ☐ Auto | ☐ Commodities (NRS 91) |
| ☐ Other Landlord/Tenant | ☐ Premises Liability | ☐ Securities (NRS 90) |
| **Title to Property** | ☐ Other Negligence | ☐ Mergers (NRS 92A) |
| ☐ Judicial Foreclosure | **Malpractice** | ☐ Uniform Commercial Code (NRS 104) |
| ☐ Other Title to Property | ☐ Medical/Dental | ☐ Purchase/Sale of Stock, Assets, or Real Estate |
| **Other Real Property** | ☐ Legal | ☐ Trademark or Trade Name (NRS 600) |
| ☐ Condemnation/Eminent Domain | ☐ Accounting | ☐ Enhanced Case Management |
| ☐ Other Real Property | ☐ Other Malpractice | ☒ Other Business Court Matters |
| **Construction Defect & Contract** | **Other Torts** | |
| **Construction Defect** | ☐ Product Liability | |
| ☐ Chapter 40 | ☒ Intentional Misconduct | **WASHOE COUNTY BUSINESS COURT** |
| ☐ Other Construction Defect | ☐ Employment Tort | ☐ NRS Chapters 78-88 |
| **Contract Case** | ☐ Insurance Tort | ☐ Commodities (NRS 91) |
| ☐ Uniform Commercial Code | ☐ Other Tort | ☐ Securities (NRS 90) |
| ☐ Building and Construction | **Civil Writs** | ☐ Investments (NRS 104 Art.8) |
| ☐ Insurance Carrier | ☐ Writ of Habeas Corpus | ☐ Deceptive Trade Practices (NRS 598) |
| ☐ Commercial Instrument | ☐ Writ of Mandamus | ☐ Trademark/Trade Name (NRS 600) |
| ☐ Collection of Accounts | ☐ Writ of Quo Warrant | ☐ Trade Secrets (NRS 600A) |
| ☐ Employment Contract | ☐ Writ of Prohibition | ☐ Enhanced Case Management |
| ☐ Other Contract | ☐ Other Civil Writ | ☐ Other Business Court Matters |
| **Judicial Review/Appeal/Other Civil Filing** | | |
| **Judicial Review** | **Other Civil Filing** | |
| ☐ Foreclosure Mediation Case | ☐ Foreign Judgment | |
| **Appeal Other** | ☐ Other Civil Matters | |
| ☐ Appeal from Lower Court | | |

2-27-15
_____
Date

_____
Signature of initiating party or representative

Form PA 201
Rev 3.1

Electronically Filed
02/27/2015 10:09:32 AM

*Steven D. Grierson*

CLERK OF THE COURT

1  COMP
   Todd L. Bice, Esq., Bar No. 4534
2  TLB@pisanellibice.com
   Jordan T. Smith, Esq., Bar No. 12097
3  JTS@pisanellibice.com
   PISANELLI BICE PLLC
4  400 South 7th Street, Suite 300
   Las Vegas, Nevada 89101
5  Telephone: 702.214.2100
   Facsimile: 702.214.2101

6  *Attorneys for Plaintiffs BGC Partners, Inc.,*
   *G&E Acquisition Company, LLC, and*
7  *BGC Real Estate of Nevada, LLC*

8                    **DISTRICT COURT**

9                 **CLARK COUNTY, NEVADA**

10
    BGC PARTNERS, INC., G&E                | Case No.: A- 15- 714490- B
11  ACQUISITION COMPANY, LLC,
    And BGC REAL ESTATE OF                 | Dept. No.: XI
12  NEVADA, LLC,

13             Plaintiffs,                  **COMPLAINT FOR DAMAGES AND
                                            INJUNCTIVE RELIEF.**
14  vs.
                                            **(BUSINESS COURT REQUESTED
15  AVISON YOUNG (CANADA) INC.,             EDCR 1.61(a)(2))**
    AVISON YOUNG (USA) INC., AVISON
16  YOUNG-NEVADA, LLC, MARK ROSE,           **(Exempt from Arbitration – Equitable
    THE NEVADA COMMERCIAL GROUP,            Relief)**
17  JOHN PINJUV and JOSEPH KUPIEC,
    DOES 1 through 5; and ROE BUSINESS
18  ENTITIES 6 through 10,

19             Defendants,

20

21          For their complaint, Plaintiffs BGC Partners, Inc. ("BGC Partners") and its indirect

22  subsidiaries, G&E Acquisition Company, LLC ("G&E Acquisition"), and BGC Real Estate of

23  Nevada, LLC d/b/a Newmark Grubb Knight Frank ("BGC RE Nevada"), and together with

24  G&E Acquisition and BGC Partners, the "Plaintiffs"), file this Complaint ("Complaint") alleging

25  against defendants Avison Young (Canada) Inc., ("Avison Young") and its U.S. affiliates,

26  Avison Young (USA) Inc. ("AY-USA"), Avison Young – Nevada, LLC ("AY-Nevada"), and

27  Mark Rose, The Nevada Commercial Group (the "Nevada Group"), John Pinjuv and Joseph Kupiec

28

                                    1

PISANELLI BICE PLLC
400 SOUTH 7ᵀᴴ STREET, SUITE 300
LAS VEGAS, NEVADA 89101

(together, "Defendants") upon personal knowledge solely as to their own actions and upon information and belief as to all other matters as follows:

## INTRODUCTION

1.    Grubb & Ellis Company ("Grubb & Ellis"), founded in 1958, was one of the oldest and largest real estate brokerages in the United States, with about 90 offices across the country. Avison Young is one of Canada's largest real estate brokerage firms.

2.    Until 2008, Avison Young's Chairman and Chief Executive Officer, Mark Rose, was the President of Grubb & Ellis in the United States. After Mr. Rose left Grubb & Ellis to join Avison Young, the latter company began an aggressive hiring campaign in the U.S. In so doing, it has tortiously and illegally looted Grubb & Ellis's commissions, personnel, offices, business, trade secrets, and business opportunities. Avison Young's scheme to divert the assets and opportunities of Grubb & Ellis continued unabated even after Grubb & Ellis filed for bankruptcy protection. Avison Young has also acted in defiance of the protections Grubb & Ellis was due under the bankruptcy laws. Plaintiffs bring this lawsuit to recover their damages and to stop Defendants from continuing their tortious and illegal conduct.

3.    Avison Young and its U.S. affiliates and the named individuals have carried out a nationwide scheme through a variety of tortious and illegal means. In this jurisdiction, they have induced a Grubb & Ellis affiliate to breach contracts in order to join Avison Young. They have misappropriated Grubb & Ellis's trade secrets by using improper means. They have committed larceny, and have induced and assisted larceny by rewarding the affiliate and its principal-with full knowledge or recklessness to the consequences-for concealing and stealing trade secrets and business opportunities that belonged to Grubb & Ellis.

4.    Avison Young and its U.S. affiliates associated and conspired with each other, the named individuals and non-party brokers to deprive Plaintiffs of contractual rights, business opportunities, trade secrets, and property. Defendants continued their enterprise even after Grubb & Ellis filed for bankruptcy by repeatedly committing criminal theft from a bankruptcy estate in violation of 18 U.S.C. § 152.

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

2

5.    By this action, Plaintiffs seek redress for the harmful and illegal actions of Avison Young, AY-USA, AY-Nevada and the named individuals, co-conspirators in Avison Young's theft. Defendants' actions have tortiously interfered with Grubb & Ellis' (and therefore Plaintiffs') contracts and property interests, stealing offices, brokers, contracts, trade secrets, and business opportunities.

6.    Plaintiffs seek an injunction to end this conduct and damages to redress the injuries owed as a result of Defendants' wrongful conduct.

7.    Plaintiffs initially sought redress for these claims against Avison Young, AY-USA and AY-Nevada as well as all of the other wrongful acts engaged in by Avison Young and its U.S. affiliates across the country, on August 1, 2012, by filing a Complaint in the Supreme Court of the State of New York, County of New York, in the matter of *BGC, Inc., et al. v. Avison Young (Canada), Inc.*, et al., Index No. 652669/2012. On December 15, 2014, the New York Court dismissed these claims against AY-Nevada for lack of personal jurisdiction.

## PARTIES

8.    BGC Partners is a Delaware Corporation with its principal place of business at 499 Park Avenue, New York, New York. BGC Partners, through its indirect subsidiary, G&E Acquisition Company, LLC, is the purchaser of and successor in interest to certain assets, contract rights, and causes of action of Grubb & Ellis, a Delaware Corporation which had its principal place of business in Santa Ana, California, its affiliate Grubb & Ellis Affiliates, Inc. ("Grubb & Ellis Affiliates"), a Delaware Corporation which had its principal place of business in Chicago, Illinois, and other Grubb & Ellis affiliates. G&E Acquisition Company, LLC is a Delaware Limited Liability Company with its principal place of business at 499 Park Avenue, New York, New York.

9.    Grubb & Ellis operated its brokerages either directly or, in some cases, through affiliates licensed to perform real estate brokerage services in particular states. The relationships between Grubb & Ellis and its affiliated brokerages were governed by contracts between Grubb & Ellis Affiliates and the affiliated brokerages.

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

3

10.    All of the commissions, contract rights, and assets that are the subject of this Complaint have been transferred to BGC Partners, which combined the real estate brokerage assets and operations it acquired from Grubb & Ellis with its existing real estate brokerage operations under the trade name Newmark Grubb Knight Frank. BGC RE Nevada is a licensed entity that operates BGC's Nevada Real Estate business and *inter alia*, provides services related to all assets and rights BGC Partners purchased relating to Grubb & Ellis's business and operations in this jurisdiction. BGC Partners was the beneficial owner of these contract rights, and assets, having purchased them free and clear of any liens or interest, in accordance with the final sale order of the Bankruptcy Court.

11.    BGC RE Nevada is a subsidiary of BGC Partners with a principal place of business at 499 Park Avenue, New York, New York 10022.

12.    Defendant Avison Young is a Canadian corporation with its principal place of business at 18 York Street, Suite 400, Toronto, Ontario, Canada. According to information published on Avison Young's web site, it is Canada's largest independently-owned commercial real estate services company.

13.    AY-USA is an Illinois Corporation with its principal place of business at 9700 West Higgins Road, Suite 500, Rosemont, Illinois. AY-USA is owned, directly or indirectly, and controlled by Avison Young.

14.    AY-Nevada is a Nevada Limited Liability Company. AY-Nevada operates a two offices located in Nevada, one located at 3753 Howard Hughes Parkway, Suite 200, Las Vegas, Nevada and one located at 6151 Lakeside Dr., Suite 1000, Reno, NV 89511. AY-Nevada is owned, directly or indirectly, and controlled by Avison Young.

15.    Upon information and belief, Mark Rose and Kim Krugman are the officers of AY-USA. AY-Nevada, and all of the other AY U.S. affiliates are similarly controlled by Mark Rose and other officers and directors of Avison Young through Avison Young (USA). Mark Rose is a resident of Canada and a citizen of the United States. Upon information and belief, Mark Rose resides at 44 Charles Street West, Suite 3801, Toronto ON M4Y 1R7, Canada.

PISANELLI BICE PLLC
400 SOUTH 7ᵀᴴ STREET, SUITE 300
LAS VEGAS, NEVADA 89101

16. John Pinjuv was the principal of Plaintiffs' Nevada affiliate, the Nevada Group and is also currently employed as the Managing Director of AY-Nevada's Reno Office. Mr. Pinjuv is believed to reside at 925 Maple Creek Court, Reno, Nevada 89511.

17. Nevada Commercial Group is a Nevada Corporation with a registered agent located at 4785 Caughlin Parkway, Reno, Nevada 89519.

18. Joseph Kupiec was an Executive Vice President and Managing Director of Grubb & Ellis Las Vegas and is now a Principal and Managing Director of AY-Las Vegas.

19. The unlawful scheme and conspiracy described herein was inspired and devised by Mr. Rose, and directed and implemented by Avison Young, AY-USA, AY-Nevada through their respective officers, directors and agents.

## JURISDICTION AND VENUE

20. The court has personal jurisdiction over all of the defendants pursuant to NRS § 14.065, as all of the Defendants have engaged in tortious conduct within and/or aimed at harming Plaintiffs' business interests in Nevada and exercising jurisdiction and is not inconsistent with the Nevada Constitution or the United States Constitution.

21. Venue is proper in Clark County pursuant to NRS § 13.040 because the certain actions and omissions giving rise the causes of action asserted herein took place in Clark County, the damages incurred by Plaintiffs in relation to the asserted causes of action occurred and are occurring in Clark County.

### Plaintiffs' Real Estate Brokerage Business and Acquisition of Grubb & Ellis Assets

22. BGC Partners is a leading global brokerage company primarily servicing the wholesale financial and property markets. BGC Partners first entered the real estate brokerage business in October 2011 when it purchased Newmark Knight Frank, a real estate brokerage firm.

23. Effective on April 5, 2012, BGC Partners expanded its real estate brokerage business by acquiring, through its indirect subsidiary, G&E Acquisition Company, LLC, substantially all of the assets of Grubb & Ellis and its subsidiaries (including Grubb & Ellis Affiliates), including a beneficial interest in and right to acquire the assets of Grubb & Ellis and its subsidiaries. These

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

1  assets included, among others, contracts, business opportunities, and leads to provide management,
2  leasing, sales and financial services, as well as the commissions and other receivables, claims,
3  causes of actions, and other rights of recovery.

4      24.    Previously, on February 20, 2012 (the "Petition Date"), Grubb & Ellis and its
5  subsidiaries filed a petition for relief under chapter 11 of title 11 of the United States Code (the
6  "Bankruptcy Code"). The purchase by BGC Partners was conducted in accordance with the
7  provisions set forth in Section 363 of the Bankruptcy Code.

8      25.    The bankruptcy court approved mechanisms to ensure payment of brokerage
9  commissions, thus enabling Grubb & Ellis to continue its real estate operations after its bankruptcy
10 filing. Among other actions, it entered a final order on March 16, 2012, permitting Grubb & Ellis
11 to pay pre-petition employees' wages, compensation, and employee benefits. Thereafter, on
12 April 13, 2012, the court approved a Transition Services Supplement, which provided that
13 Grubb & Ellis could "continue to pay [post-petition] salaries, wages, bonus, [and] commissions" to
14 Business Employees, including brokers, and, to the extent that funds were insufficient,
15 BGC Partners would make such funds available. As for pre-petition commissions, BGC Partners
16 offered to pay in the form of a two-year loan that would be forgiven after a period of time. BGC
17 Partners did offer and provide such payments to Grubb & Ellis brokers in connection with their
18 further association with G&E Acquisition Company and/or BGC RE Nevada.

19     26.    BGC Partners combined the real estate brokerage operations it acquired from
20 Grubb & Ellis with its existing real estate brokerage operations under the trade name Newmark
21 Grubb Knight Frank. Pursuant to a Second Amended and Restated Asset Purchase Agreement and
22 a Transition Services Supplement to the Asset Purchase Agreement between Grubb & Ellis and
23 BGC Partners, each dated April 13, 2012, executory contracts to which Grubb & Ellis is a party
24 remained with Grubb & Ellis pending the designation by BGC Partners of such contracts for
25 assignment to BGC Partners. One of the executory contracts purchased and assumed by
26 BGC Partners from Grubb & Ellis was Grubb & Ellis' Affiliate Agreement with the Nevada Group.

27
28

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

27.   From the Petition Date through the April 5, 2012, the effective date of the sale, the assets of Grubb & Ellis and its subsidiaries were property of the bankruptcy estate and, as such, were subject to the "automatic stay" established by Section 362(a)(3) of the Bankruptcy Code. The "automatic stay" prohibits any act to obtain possession of property of a bankruptcy estate, including, but not limited to executory contracts. In addition, 18 U.S.C. § 152(1) makes it a felony knowingly and fraudulently to conceal from a bankruptcy estate "any property belonging to the estate of a debtor," and 18 U.S.C. § 152(5) makes it a felony to "knowingly and fraudulently receive any material amount of property from a debtor after the filing of a case under title 11, with intent to defeat the provisions of title 11."

28.   From April 5, 2012, to the date of transfer, which occurred on a rolling basis, BGC Partners owned the beneficial interest in the commissions, contract rights, and assets that are the subject of this Complaint by virtue of its right to designate such rights and assets for assignment to BGC Partners. Pursuant to the Asset Purchase Agreement, BGC Partners used reasonable best efforts to obtain the necessary real estate permits and licenses required to operate in many jurisdictions. All of the assets that are the subject of this Complaint have been transferred to BGC Partners. BGC RE Nevada is the licensed entity that performs the services related to all assets and rights BGC Partners purchased related to Grubb & Ellis's Nevada operations. As the licensed operating entity, BGC RE Nevada was the entity that would benefit from the assets purchased from Grubb & Ellis by BGC Partners and consequently the entity also suffered injury based on the conduct alleged below.

## Defendants' Unlawful Scheme and Conspiracy To Plunder Plaintiffs' Real Estate Brokerage Assets

29.   In June 2008, Mark Rose-who had resigned as Chief Executive Officer of Grubb & Ellis only months earlier-became Chief Executive Officer of Avison Young. Avison Young had no significant real estate brokerage or other services in the United States at the time. In 2009, under Mr. Rose's new leadership, Avison Young embarked upon a self-described "aggressive growth and expansion strategy" and began acquiring real estate brokerage operations

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

7

1  in the U.S. market and opening others with brokers from its competitors. It opened its first U.S.

2  office in Chicago in 2009, followed by additional offices in, among other places, Washington, D.C.,

3  Atlanta, Boston, Dallas, Houston, Los Angeles, Reno, New York City, and Pittsburgh.

4         30.     Defendants have carried out their aggressive expansion strategy through unlawful

5  means and to Plaintiffs' detriment, including by targeting and stealing the operations and offices of

6  Mr. Rose's former company for his new company, Avison Young. Without this wrongful conduct

7  Defendants would have never been able to get off the ground and expand as they have.

8         31.     Avison Young could have sought the assets of Grubb & Ellis through the bankruptcy

9  sale, but did not even attempt to bid for Grubb & Ellis' assets there. Instead, the Company

10  determined to subvert the bankruptcy process and steal as many of those assets, including

11  commissions, contracts, offices, trade secrets and personnel, as possible through an illegal scheme

12  to loot Grubb & Ellis, including but not limited to Grubb & Ellis' Nevada affiliate.

13         32.     Upon information and belief, this scheme was inspired and devised by Mr. Rose,

14  and directed and implemented by Avison Young, AY-USA and AY-Nevada, through its directors,

15  officers and agents.

16                            **Defendants Steal Plaintiffs' Nevada Affiliate**

17         33.     Defendants tortiously conspired to induce the Nevada Group to breach its affiliation

18  agreement with Grubb & Ellis Affiliates, an agreement that was the property of the bankruptcy

19  estate, and become an office/affiliate of Avison Young. In doing so, Defendants have wrongfully

20  exercised ownership, dominion and control over certain Grubb & Ellis trade secret business

21  opportunities and relationships, and brokerage opportunities, that are the property of Plaintiffs.

22         34.     By way of background, Grubb & Ellis, through its subsidiary, Grubb & Ellis

23  Affiliates, had contractual arrangements with a number of established real estate brokerage

24  companies across the United States to provide real estate brokerage services under Grubb & Ellis's

25  service and trademarks. Defendants tortiously conspired with the Nevada affiliate, and others, to

26  terminate their contracts with Grubb & Ellis Affiliates. These putative terminations occurred during

27  the period when the "automatic stay" in bankruptcy was in effect and, as such, were illegal under

28

PISANELLI BICE PLLC<br>400 SOUTH 7TH STREET, SUITE 300<br>LAS VEGAS, NEVADA 89101

1 │ the Bankruptcy Code.   Moreover, these terminations resulted in Defendants' knowing and
2 │ fraudulent receipt of property of the bankruptcy estate and, as such, constituted a criminal violation
3 │ of 18 U.S.C. § 152(5).

4 │     35.   With respect to its operations in Reno, Nevada, on April 1, 2010, Grubb & Ellis
5 │ Affiliates entered into a "Commercial Real Estate Brokerage Affiliation Agreement" (the "Nevada
6 │ Agreement") with the Nevada Group. The Nevada Agreement provided, among other things, that
7 │ the Nevada Group would participate, as an affiliate of Grubb & Ellis Affiliates, in cooperative
8 │ marketing and referral programs.   The parties agreed that, during the term of the Nevada
9 │ Agreement, the Nevada Group received the right to use certain Grubb & Ellis services and
10 │ trademarks in the conduct of its brokerage business.

11 │     36.   The Nevada Agreement was for a definite period of time – three years, until
12 │ April 1, 2013 – and during that period of time, was terminable only for cause. If the Nevada Group
13 │ terminated without cause at the end of the term, it was obligated to provide written notice to
14 │ Grubb & Ellis Affiliates not less than one hundred and fifty (150) calendar days in advance of the
15 │ April 1, 2013 expiration date.

16 │     37.   The Nevada Agreement required the Nevada Group to execute a standard
17 │ Confidentiality Agreement to protect against the unauthorized disclosure of trade secrets and other
18 │ confidential information.   Upon information and belief, Defendants, as commercial brokerage
19 │ entities within the industry, knew that the Plaintiffs' proprietary information and database
20 │ concerning clients and contact information constituted trade secrets and knew that the
21 │ Nevada Group, like all affiliates, had a duty of confidentiality with respect to this information.

22 │     38.   The Nevada Agreement specifically provided that the Nevada Group could not
23 │ compete or perform in competition with the business interest of Plaintiffs.

24 │     39.   By letter dated March 1, 2012, while the "automatic stay" remained in effect and
25 │ without providing the requisite 150-day advance notice, the President of the Nevada Group, John
26 │ Pinjuv, notified Grubb & Ellis Affiliates of the Nevada Group's intent not to renew the Agreement
27 │
28 │

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

1   at the end of its present term and, in addition, that it would be "ceasing its operations effective
2   March 5, 2012."

3        40.    On March 5, 2012, Avison Young issued a Press Release stating that it was opening
4   a new office in Reno, at the same address previously occupied by the Nevada Group, with
5   Mr. Pinjuv serving as its Managing Director.

6        41.    Grubb & Ellis Affiliates responded to Mr. Pinjuv's letter on May 31, 2012. The
7   May 31, 2012 letter notified the Nevada Group that its purported termination of the Nevada
8   Agreement was unlawful under Section 362(a)(3) of the Bankruptcy Code and, further, that it was
9   ineffective under the relevant terms of the Nevada Agreement. Grubb & Ellis Affiliates also stated
10  that the Nevada Group's current affiliation with Avison Young was a clear breach of the
11  non-competition provisions of the Nevada Agreement. Grubb & Ellis Affiliates demanded that the
12  Nevada Group immediately "CEASE AND DESIST" from any further affiliation with
13  Avison Young and resume the performance of its duties under the Nevada Agreement.

14       42.    The Nevada Group responded through counsel by letter dated June 8, 2012. Counsel
15  did not deny that the Nevada Group's purported termination of the Nevada Agreement was unlawful
16  but indicated that the Nevada Group, having ceased operations, was "insolvent" and "does not have
17  the funds" to pay any amounts that might be due to Grubb & Ellis Affiliates under the Nevada
18  Agreement.

19       43.    Upon information and belief, the Nevada Group was offered incentives by
20  Avison Young to induce the Nevada Group to breach its contract with Grubb & Ellis and to disclose
21  trade secrets. The incentives offered to the Nevada Group far exceeded industry standards and far
22  exceeded a minimum level of ethical behavior in the marketplace.

23       44.    Mr. Rose, Avison Young, AY-USA and AY-Nevada were aware of the Nevada
24  Group's ongoing obligations under the Nevada Agreement and also were aware that the Nevada
25  Group's purported termination of the Nevada Agreement was barred by the "automatic stay"
26  provision of the Bankruptcy Code. Mr. Rose, Avison Young, AY-USA and AY-Nevada also were
27  aware, or should have been aware, that their knowing and fraudulent receipt of assets belonging to
28

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

10

the bankruptcy estate constituted a criminal violation of 18 U.S.C. § 152(1) and (5). Avison Young on March 5, 2012 publicly boasted that "[p]rior to joining Avison Young, [Mr. Pinjuv] served as President of Grubb & Ellis in Reno, specializing in investment properties in the Northern Nevada area."

### Defendants Wrongful Inducement of Grubb & Ellis Employees to Join AY-Nevada.

45.     Upon information and belief, Defendants, as commercial brokerage entities within the industry, knew that confidential information about clients, their contact information, and their preferences constituted trade secrets and knew that individual brokers and employees have a duty of confidentiality with respect to this information.

46.     Grubb & Ellis also had an office in Las Vegas. Grubb & Ellis had contractual arrangements with individual licensed real estate brokers who are licensed to perform brokerage services in Nevada, either as employees or as independent contractors, in the Las Vegas office.

47.     Joseph Kupiec was the Managing Director of the Las Vegas office and had an agreement which prohibited him from soliciting Plaintiffs' brokers and employees to engage in direct competition with Plaintiffs and contained certain non-disclosure obligations.

48.     Joseph Kupiec is currently the AY-Las Vegas Managing Director.

49.     Upon information and belief, Defendants worked with Joseph Kupiec to wrongfully induce Grubb & Ellis Las Vegas brokers and employees to terminate their agreements with Grubb & Ellis and to take and use Business Opportunities and trade secrets belonging to Grubb & Ellis.

50.     Upon information and belief, one year prior to his departure from Grubb & Ellis' Las Vegas office, Kupiec was engaged in communications with Avison Young representatives in which he improperly provided confidential and proprietary information about Grubb & Ellis' Las Vegas operations, as well as Grubb & Ellis' operations in Nevada generally, to Avison Young.

51.     Upon information and belief, while still employed by Grubb & Ellis, Kupiec advised Avison Young representatives which Las Vegas brokers Avison Young should target.

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

11

52.   Kupiec left Grubb & Ellis at the end of 2011 and within six months of his departure, the Nevada Group breached its affiliate agreement and brokers and employees at Grubb & Ellis' Las Vegas office departed.

53.   Defendants (or some of them) have engaged in a scheme to induce brokers working for Grubb & Ellis not only to terminate their brokerage agreements, but also to steal trade secrets and to conceal Business Opportunities from the firm when departing.

54.   The compensation packages offered by Avison Young to former Grubb & Ellis brokers and employees were designed to induce them to breach their contracts with Grubb & Ellis and to disclose trade secrets.

55.   Many of the brokers and employees induced by Defendants' unlawful scheme were key employees of Grubb & Ellis.

## CAUSES OF ACTION

### COUNT I

**(Tortious Interference with Contractual Relationships - All Defendants)**

56.   Plaintiffs incorporate by reference each and every allegation above as if fully set forth.

57.   At all relevant times, Grubb & Ellis, through its subsidiary, Grubb & Ellis Affiliates, had a valid contract with the Nevada Group.  That contract was a valid part of the assets of Grubb & Ellis and its subsidiaries and was acquired by BGC Partners on April 5, 2012.

58.   Defendants had knowledge of Plaintiffs' contract with the Nevada Group.  This was immediately apparent from the name of the affiliate, for example, "Grubb & Ellis NCG." Avison Young's strategy has been to target established Grubb & Ellis affiliates, in particular affiliates in Reno.

59.   Defendants maliciously induced the Nevada affiliate to breach its affiliate agreement, without justification, by terminating its affiliation agreement with Grubb & Ellis Affiliates in violation of the "automatic stay," without providing the requisite 150-day advance

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

1    notice and in violation of the non-competition provisions of the agreements and by disclosing trade
2    secrets.

3        60.    Defendants induced these breaches of contract intentionally and without justification
4    as part of their aggressive expansion strategy.

5        61.    The Nevada Group would not have breached their contracts but for Defendants'
6    conduct.

7        62.    Defendants used wrongful, dishonest, unfair, and unethical means to induce
8    Grubb & Ellis affiliates to breach their affiliate agreements. They did so to subvert the bankruptcy
9    process and steal as many offices as possible through an illegal scheme to loot Grubb & Ellis.

10       63.    Defendants' tortious interference with contract caused pecuniary loss to Plaintiffs in
11    an amount to be determined at trial but which exceeds $10,000.

12       64.    Defendants' conduct was undertaken with malice and oppression thereby entitling
13    Plaintiffs to an award of punitive damages so as to discourage Defendants, and others like them,
14    from undertaking similar misconduct in the future.

15                              COUNT II

16       **(Violation of Nevada Racketeer Influenced Corrupt Organization Act
17       ("Nevada RICO Statute") NRS § 207.470, et seq. - all Defendants)**

18       65.    Plaintiffs incorporate by reference each and every allegation set forth above as if
19    fully set forth.

20       66.    The Nevada RICO statute states, in pertinent part:

21          Any person who is injured in his or her business or property by reason
22          of any violation of NRS § 207.400 has a cause of action against a
            person causing such injury for three times the actual damages
23          sustained. An injured person may also recover attorney's fees in the
            trial and appellate courts and costs of investigation and litigation
24          reasonably incurred.

25    NRS § 207.470.

26       67.    In the present case, Plaintiffs have been injured in their business and property by
27    reason of the Defendants' violation of NRS § 207.400.

28

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

68.   More specifically, the Defendants, in coordinating and implementing their wrongful actions in order to achieve the theft of Plaintiffs' Nevada affiliate, Plaintiffs' broker agreements and its related commissions, business, Business Opportunities and trade secrets, engaged in an "enterprise" as defined by NRS § 207.380.

69.   The actions taken by the Defendants, in the course of stealing the Nevada Group and related assets, from a period of, at the latest, March 5, 2012, through the present date, constitute more than two "predicate acts" as defined by NRS § 207.30. Specifically, Defendants' predicate acts include, but are not limited to:

(a)   Theft of Plaintiffs' contract rights in relation to its Nevada Affiliate Agreement in violation of NRS § 207.360.9, 360.24, and 360.26;

(b)   Theft of monies owed to Plaintiffs pursuant to its Nevada Affiliate Agreement in violation of NRS § 207.360.9, 360.24, and 360.26;

(c)   Theft of multiple business deals Plaintiffs had in progress at the time of the Nevada Group's wrongful termination of its Affiliate Agreement in violation of NRS § 207.360.9, 360.24, and 360.26;

(d)   Theft of multiple Business Opportunities owned by the Plaintiffs pursuant to its Nevada Affiliate Agreements in violation of NRS § 207.360.9, 360.24, and 360.26;

(e)   Theft of Plaintiffs' broker relationships through fraudulent representations and inducements in violation of NRS § 207.360.9, 360.24, and 360.26; and

(f)   Theft of multiple trade secrets in violation of NRS § 207.360.9, 360.24, and 360.26.

70.   As a direct and proximate result of the predicate acts engaged in by the Defendants enterprise, the Plaintiffs have suffered significant losses and damages in an amount to be determined at trial but which exceed $10,000.

71.   Defendants' conduct is egregious and entitles Plaintiffs to treble damages, as well as attorneys' fees and costs under NRS § 207.470.

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

14

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

**COUNT III**

**(Breach of Contract - Defendant Nevada Group)**

72.    Plaintiffs incorporate by reference each and every allegation above as if fully set forth.

73.    The Nevada Agreement between Grubb & Ellis and the Nevada Group required the Nevada Group to: provide advance notice prior to terminating the agreement; maintain the confidentiality of Grubb & Ellis' trade secret information; and refrain from engaging in direct competition with Grubb & Ellis.

74.    Plaintiffs purchased and assumed the Nevada Agreement from Grubb & Ellis in the bankruptcy proceedings.

75.    The Nevada Group breached the Nevada Agreement by terminating the agreement without providing the requisite notice, by joining Avison Young to engage in direct competition with the Plaintiffs, and by disclosing Plaintiffs' trade secrets to Avison Young.

76.    As a direct and proximate result of the Nevada Group's breach, the Plaintiffs have suffered substantial damages, in an amount to be determined at trial but which exceeds $10,000.

**COUNT IV**

**(Breach of Contract - Defendant Kupiec)**

77.    Plaintiffs incorporate by reference each and every allegation set forth above as if fully set forth.

78.    Pursuant to the terms of his agreement Mr. Kupiec was prohibited from soliciting Plaintiffs' brokers to engage in direct competition with Plaintiffs.

79.    Pursuant to the terms of his agreement Mr. Kupiec was prohibited from disclosing Grubb & Ellis' confidential and proprietary information.

80.    Mr. Kupiec breached his contractual obligation to the Plaintiffs by, after joining AY-Las Vegas in November 2011, soliciting Plaintiffs' Las Vegas brokers, and inducing them to terminate their agreements with the Plaintiffs in order to join Avison Young and by providing confidential and proprietary information to Avison Young while still employed by Grubb & Ellis.

81.     As a direct and proximate result of his breach, within months of Mr. Kupiec's termination of his agreement with the Plaintiffs', and during Grubb & Ellis' bankruptcy, several brokers terminated their agreements with Plaintiffs and executed agreements to join AY-Las Vegas, to engage in direct competition with the Plaintiffs.

82.     As a direct and proximate result of this breach, Plaintiffs have lost revenue, business relationships, Business Opportunities and trade secrets.

83.     As a direct and proximate result of this breach, Plaintiffs have suffered substantial damages, in an amount to be determined at trial but which exceeds $10,000.

## COUNT V

### (Tortious Breach of the Covenant of Good Faith and Fair Dealing - Defendant Nevada Group)

84.     Plaintiffs incorporate by reference each and every allegation set forth above as if fully set forth.

85.     It is well settled in Nevada that every contract imposes upon the contracting parties the duty of good faith and fair dealing.

86.     The Nevada Group breached that duty by engaging in direct competition with the Plaintiffs by joining Avison Young and by disclosing Plaintiffs' trade secrets to Avison Young, giving Avison Young an unfair advantage in its direct competition with Plaintiffs in the market place.

87.     Because the Nevada Group was in an entrusted position at Grubb & Ellis, as its affiliate in Nevada, and because its actions described above constitute "grievous and perfidious conduct" under Nevada law, the Nevada Group is liable in tort to the Plaintiffs for its breach of the implied covenant of good faith and fair dealing.

88.     As a direct and proximate result of this tortious breach of the implied covenant of good faith and fair dealing, the Plaintiffs have suffered significant losses and damages, in an amount to be determined at trial but which exceeds $10,000.

16

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

1  89.   Defendants' conduct was undertaken with malice and oppression thereby entitling

2  Plaintiffs to an award of punitive damages so as to discourage Defendants, and others like them,

3  from undertaking similar misconduct in the future.

4  ## COUNT VI

5  **(Tortious Breach of the Covenant of Good Faith and Fair Dealing - Defendant Kupiec)**

6  90.   Plaintiffs incorporate by reference each and every allegation set forth above as if

7  fully set forth.

8  91.   It is well settled in Nevada that every contract imposes upon the contracting parties

9  the duty of good faith and fair dealing.

10  92.   Mr. Kupiec breached that duty by inducing other Plaintiffs' brokers and employees

11  to terminate their agreements in order to join AY-Nevada and engage in direct competition with the

12  Plaintiffs, in violation of their agreements with Plaintiffs.

13  93.   Mr. Kupiec breached that duty by disclosing Grubb & Ellis' confidential and

14  proprietary information to Avison Young.

15  94.   Because Mr. Kupiec was in an entrusted position at Grubb & Ellis, as a Managing

16  Director of its Las Vegas office, and because his actions described above constitutes "grievous and

17  perfidious conduct" under Nevada law, he is liable in tort to the Plaintiffs for his breach of the

18  implied covenant of good faith and fair dealing.

19  95.   As a direct and proximate result of this tortious breach of the implied covenant of

20  good faith and fair dealing, the Plaintiffs have suffered significant losses and damages, in an amount

21  to be determined at trial but which exceeds $10,000.

22  96.   Defendants' conduct was undertaken with malice and oppression thereby entitling

23  Plaintiffs to an award of punitive damages so as to discourage Defendants, and others like them,

24  from undertaking similar misconduct in the future.

25

26

27

28

**COUNT VII**

**(Aiding and Abetting Breach of the Covenant of Good Faith and Fair Dealing - The Nevada Group and Defendant Kupiec)**

97.    Plaintiffs incorporate by reference each and every allegation set forth above as if fully set forth.

98.    At every relevant time, the Nevada Group and Mr. Kupiec owed Plaintiffs a duty of good faith and fair dealing based on, *inter alia*, their contractual obligations to the Plaintiffs and the special trust and confidence that had been reposed in them by Plaintiffs by making the Nevada Group its Nevada affiliate and by assigning Mr. Kupiec as the Managing Director of the Grubb & Ellis Las Vegas office.

99.    The Nevada Group and Mr. Kupiec breached their duty of good faith and fair dealing by the acts and omissions alleged above.

100.    At all relevant times, Defendants had knowledge of the Nevada Group's and Mr. Kupiec's duty of good faith and fair dealing to Plaintiffs.

101.    Defendants knowingly participated in the breach by tortiously conspiring with the Nevada Group to terminate its agreement with the Plaintiffs, disclosing Plaintiffs' trade secrets to the Defendants, and directly competing with the Plaintiffs.

102.    Defendants knowingly participated in the breach by tortiously conspiring with Mr. Kupiec to induce other brokers and employees to terminate Plaintiffs' contract, disclose trade secrets and withhold information about Business Opportunities from Plaintiff that properly belonged to Plaintiffs, and thus conceal assets from the bankruptcy estate. By enabling these breaches to occur, Defendants provided substantial assistance to Mr. Kupiec.

103.    As a direct and proximate result of these breaches, Plaintiffs have been damaged in an amount to be proven at trial, in an amount to be determined at trial but which exceeds $10,000.

104.    Defendants' conduct was undertaken with malice and oppression thereby entitling Plaintiffs to an award of punitive damages so as to discourage Defendants, and others like them, from undertaking similar misconduct in the future.

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

## COUNT VIII

### (Conspiracy - All Defendants)

105.    Plaintiffs incorporate by reference each and every allegation set forth above as if fully set forth.

106.    Defendants entered into a conspiracy to loot unlawfully Grubb & Ellis' commissions, personnel, offices, business, trade secrets, and Business Opportunities. The unlawful scheme and conspiracy described herein was inspired and devised by Mr. Rose, and directed and implemented by Avison Young and AY-USA, through its directors, officers and agents and carried out the scheme and conspiracy under Avison Young's direction and control.

107.    Defendants' conspiracy and overt acts in furtherance of their unlawful scheme have included, among other things inducing the Nevada Group to breach its contract in order to join Avison Young; and inducing and assisting larceny by the Nevada Group by rewarding them-with full knowledge or recklessness to the consequences-for disclosing and stealing Business Opportunities and trade secrets that belonged to Grubb & Ellis.

108.    The conspiracy to loot unlawfully Grubb & Ellis' commissions, personnel, office, business, business opportunities and trade secrets directly and proximately caused Plaintiffs harm. Plaintiffs seek damages and other relief in an amount to be proven at trial but which exceeds $10,000.

109.    Defendants' conduct was undertaken with malice and oppression thereby entitling Plaintiffs to an award of punitive damages so as to discourage Defendants, and others like them, from undertaking similar misconduct in the future.

## COUNT IX

### (Theft of Trade Secrets In Violation of Nevada Trade Secrets Act- NRS § 600A.010, et seq. - All Defendants)

110.    Plaintiffs incorporate by reference each and every allegation set forth above as if fully set forth.

PISANELLI BICE PLLC
400 SOUTH 7ᵀᴴ STREET, SUITE 300
LAS VEGAS, NEVADA  89101

111.    The Nevada Trade Secrets Act prohibits the misappropriation of trade secrets; and entitles persons who are harmed by such misappropriations to seek damages. See NRS § 600A.050.

112.    By tortiously and illegally stealing Plaintiffs' Nevada affiliate, and related Business Opportunities, Defendants misappropriated trade secrets belonging to Plaintiffs.

113.    These trade secrets, which are defined by contract, include not just names of customers but also detailed information of commercial value about specific customer data, preferences about properties and locations, purchasing histories, lease renewal dates, and on- going, developing leads that were obtained through cultivation of hard-won, longstanding relationships with third-party customers and potential customers.  These trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. The universe of potential buyers, sellers, lessors, and lessees of commercial real estate is infinite; the identity and detailed information about actual and potential customers and Business Opportunities, and maintained as a trade secret by Plaintiffs, was a defined subset of this market. The economic value of these trade secrets gave Plaintiffs a competitive advantage in servicing its clients and creating new business.

114.    To develop similar trade secrets independently would have taken years, and would have required Defendants to go to extraordinary lengths and to expend considerable amounts of money to establish the types and depth of relationships and the cultivated level of trust required to yield the number of Business Opportunities that they misappropriated.

115.    Such trade secrets are and have been the subject of efforts that are reasonable under the circumstances to maintain their secrecy, such as, among other efforts, by contractually obligating brokers and Affiliates to use trade secrets in a way that preserves their confidentiality.

116.    Defendants misappropriated Plaintiffs' trade secrets through bad faith and improper, unfair, and fraudulent means including, but not limited to, inducing the Nevada Affiliate to breach confidentiality obligations, non-compete provisions, and specific contractual terms not to disclose Plaintiffs' trade secrets.

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

1    117.    At the time Defendants misappropriated and used such trade secrets, Defendants

2 knew or should have known that they (i) acquired these trade secrets under circumstances giving

3 rise to a duty to maintain their secrecy or limit their use and (ii) acquired these trade secrets from

4 or through persons who owed a duty to Plaintiffs the secrecy of or limit the use of these trade

5 secrets.

6    118.    As a result of Defendants' wrongful acts as alleged herein, Plaintiffs have suffered

7 damages and injuries that, if not promptly enjoined and otherwise remedied, will be irreparable.

8    119.    By committing the wrongful acts described above, Defendants have engaged and

9 continue to engage in willful and malicious misappropriation, knowing that their actions would

10 harm Plaintiffs.

11                                COUNT X

12        (Breach of Fiduciary Duty - Defendants Pinjuv and Kupiec)

13    120.    Plaintiffs incorporate by reference each and every allegation set forth above as if

14 fully set forth herein.

15    121.    At every relevant time, Mr. Pinjuv, and Mr. Kupiec owed Plaintiffs fiduciary duties

16 based on, *inter alia*, the special trust and confidence that had been reposed in them by Plaintiffs,

17 the control that Plaintiffs entrusted to them to protect and maintain custody of the Plaintiffs' assets

18 in the form of trade secrets, and Business Opportunities, and the reliance that Plaintiffs placed on

19 the their expertise and knowledge of Business Opportunities.  The fiduciary duties owed by

20 Messrs. Pinjuv and Kupiec to Plaintiffs included duties of loyalty, care, disclosure and fair dealing,

21 and the duty not to deprive Plaintiff of opportunities and information belonging to Plaintiffs.

22    122.    Messrs. Pinjuv and Kupiec breached their fiduciary duties to Plaintiffs by inducing

23 the Nevada Group and individual Nevada brokers to terminate Plaintiffs' contracts, disclose trade

24 secrets, withhold information about Business Opportunities and commissions from Plaintiff that

25 properly belonged to Plaintiffs, and thus conceal assets from the bankruptcy estate.

26    123.    As a direct and proximate result of these breaches of fiduciary duty, Plaintiffs have

27 been damaged in an amount to be proven at trial but which exceeds $10,000.

28

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

1    124.    Defendants' conduct was undertaken with malice and oppression thereby entitling

2    Plaintiffs to an award of punitive damages so as to discourage Defendants, and others like them,

3    from undertaking similar misconduct in the future.

4                                   **COUNT XI**

5            **(Aiding and Abetting Breach of Fiduciary Duty - All Defendants)**

6    125.    Plaintiffs incorporate by reference each and every allegation set forth above as if

7    fully set forth.

8    126.    At every relevant time, Plaintiffs' Nevada affiliate, Mr. Pinjuv, and Mr. Kupiec

9    owed Plaintiffs fiduciary duties based on, *inter alia*, the special trust and confidence that had been

10   reposed in them by Plaintiffs, the control that Plaintiffs entrusted to them to protect and maintain

11   custody of the Plaintiffs' assets in the form of trade secrets, and Business Opportunities, and the

12   reliance that Plaintiffs placed on the their expertise and knowledge of Business Opportunities. The

13   fiduciary duties owed by Mr. Pinjuv, Mr. Kupiec, and agents of the affiliate to Plaintiffs included

14   duties of loyalty, care, disclosure and fair dealing, and the duty not to deprive Plaintiff of

15   opportunities and information belonging to Plaintiffs.

16   127.    Individual agents of the affiliate breached their fiduciary duties by the acts and

17   omissions alleged above.

18   128.    At all relevant times, Defendants had knowledge of the affiliate's fiduciary duty to

19   Plaintiffs.

20   129.    Defendants knowingly participated in the breach by tortiously conspiring with

21   Mr. Pinjuv, Mr. Kupiec and the Nevada Group to induce them to terminate Plaintiffs' contract,

22   disclose trade secrets, withhold information about Business Opportunities and commissions from

23   Plaintiff that properly belonged to Plaintiffs, and thus conceal assets from the bankruptcy estate.

24   They did so by offering to the Nevada Group an exorbitant compensation arrangement, designed to

25   actively and unlawfully divert Plaintiffs' business. By enabling these breaches to occur, Defendants

26   provided substantial assistance to the Nevada Group.

27

28

1    130.    As a direct and proximate result of these breaches of fiduciary duty, Plaintiffs have
2    been damaged in an amount to be proven at trial but which exceeds $10,000.

3    131.    Defendants' conduct was undertaken with malice and oppression thereby entitling
4    Plaintiffs to an award of punitive damages so as to discourage Defendants, and others like them,
5    from undertaking similar misconduct in the future.

6                                    COUNT XII

7                         (Conversion - All Defendants)

8    132.    Plaintiffs incorporate by reference each and every allegation set forth above as if
9    fully set forth herein.

10    133.    Defendants' theft of Plaintiffs' Nevada affiliate has resulted in Defendants'
11    unauthorized assumption and control of contract rights, Business Opportunities and trade secrets
12    which belong to the Plaintiffs.

13    134.    As a direct and proximate result of Defendants' unauthorized assumption and
14    control of those assets, Plaintiffs have suffered damages in an amount to be proven at trial but which
15    exceeds $10,000.

16    135.    Defendants' conduct was undertaken with malice and oppression thereby entitling
17    Plaintiffs to an award of punitive damages so as to discourage Defendants, and others like them,
18    from undertaking similar misconduct in the future.

19                                    COUNT XIII

20                      (Unjust Enrichment - All Defendants)

21    136.    Plaintiffs incorporate by reference each and every allegation set forth above as if
22    fully set forth.

23    137.    Defendants have received a benefit in the form of a substantial number of Business
24    Opportunities and business relationships and trade secrets that rightly belonged to Plaintiffs and/or
25    the bankruptcy estate, of which Plaintiffs are beneficiaries.

26

27

28

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

23

1    138.    Defendants had knowledge of the benefit provided to them and have retained it at

2 expense of Plaintiffs and/or the bankruptcy estate. It would be unjust to allow Defendants to retain

3 the benefit they received from Plaintiffs and/or the bankruptcy estate.

4    139.    By reason of the foregoing, Defendants are liable for unjust enrichment in an amount

5 to be proven at trial but which exceeds $10,000.

6                              **PRAYER FOR RELIEF**

7    WHEREFORE Plaintiffs respectfully request that the Court enter judgment for Plaintiffs

8 and against Defendants, awarding Plaintiffs the following:

9    1.    Damages in an amount to be proven at trial but which exceeds $10,000;

10    2.    Punitive damages as alleged;

11    3.    Treble Damages pursuant to NRS § 207.470;

12    4.    Injunctive relief as alleged;

13    5.    The amount corresponding to Defendant's unjust enrichment;

14    6.    Prejudgment and post-judgment interest at the highest lawful rates;

15    7.    Attorney's fees and costs as permitted by law; and

16    8.    Such other and further relief as this Court deems appropriate.

17    DATED this 27th day of February, 2015.

18                              PISANELLI BICE PLLC

19

20    By: _____
                    Todd L. Bice, Esq., Bar No. 4534
21                    Jordan T. Smith, Esq., Bar No. 12097
                    400 South 7th Street, Suite 300
22                    Las Vegas, Nevada 89101

23                    *Attorneys for Plaintiffs BGC Partners, Inc.,*
                    *G&E Acquisition Company, LLC, and*
24                    *BGC Real Estate of Nevada, LLC*

25

26

27

28

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

24