1
2
3
4
5
6
7
8
9
10
11
12
13

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| NEWMARK GROUP, INC. et al., | Case No.: 2:15-cv-00531-RFB-GWF |
| Plaintiffs, | **ORDER, FINDINGS AND RECOMMENDATION** |
| v. | |
| AVISON YOUNG (CANADA) INC., et al., | **Re:  Motion for Leave to File Second Amended Complaint (ECF No. 186).** |
| Defendants. | |

14    This matter is before the Court on Plaintiffs' Motion for Leave to File Second Amended

15    Complaint (ECF No. 186), filed on September 19, 2018.  The Avison Young Defendants filed

16    their Opposition (ECF No. 206) on October 10, 2018.  Defendants Nevada Commercial Group

17    and John Pinjuv filed their Joinder (ECF No. 207) to the opposition on October 10, 2018.

18    Plaintiffs filed their Reply (ECF No. 209) on October 17, 2018.  The Court conducted a hearing

19    on October 24, 2018, during which it authorized the parties to file supplemental briefs.  Plaintiffs

20    filed their Supplemental Brief (ECF No. 214) on November 14, 2018, and Defendants filed their

21    Supplemental Brief (ECF No. 215) on November 29, 2018.

22    **BACKGROUND**

23    Plaintiffs allege that Grubb & Ellis Company was one of the oldest and largest real estate

24    brokerage firms in the United States.  *First Amended Complaint* (ECF No. 65), at ¶ 1.  Grubb &

25    Ellis filed for bankruptcy protection on February 20, 2012, and Plaintiffs purchased all of its

26    commissions, contract rights, and assets through the bankruptcy proceedings.  *Id.* at ¶¶ 23-28.

27    Grubb & Ellis operated its brokerages either directly or through affiliates licensed to

28    provide real estate brokerage services in particular states.  *Id.* at ¶ 9.  Grubb & Ellis's president,

1

Mark Rose, left the company in 2008 to join Defendant Avison & Young which was a Canadian real estate brokerage firm that was seeking to expand its operations into the United States. *Id.* at ¶¶ 1, 2. After Defendant Rose joined Avison & Young, it allegedly began an aggressive hiring campaign in the United States through which it looted Grubb & Ellis's commissions, personnel, offices, business, trade secrets, and business opportunities. The scheme continued unabated even after Grubb & Ellis filed for bankruptcy. *Id.* at ¶¶ 2, 24, 29-32. As part of the alleged scheme, Defendants induced Grubb & Ellis's Nevada affiliate, Nevada Commercial Group, to breach its affiliate agreement and become an affiliate of Defendants. *Id.* at ¶¶ 34-44. Defendants also conspired with Joseph Kupiec, the manager-director of Grubb & Ellis's Las Vegas office, to induce Grubb & Ellis's brokers and employees to terminate their agreements and "take and use Business Opportunities and trade secrets belonging to Grubb & Ellis." Mr. Kupiec subsequently became the managing director of Defendants' Las Vegas affiliate and provided Grubb & Ellis's confidential and proprietary information to Defendants. *Id.* at ¶¶ 45-55. Defendants also induced brokers working for Grubb & Ellis to terminate their contracts and steal trade secrets and conceal business opportunities from the firm when departing. *Id.* at ¶ 53.

Plaintiffs' first amended complaint alleged causes of action for (1) tortious interference with contractual relations; (2) violations of the Nevada RICO statute, NRS 207.470, et seq.; (3) breach of contract against Defendants Nevada Group, Pinjuv, and Kupiec; (4) tortious breach of the covenant of good faith and fair dealing against Defendants Nevada Group, Pinjuv, and Kupiec; (5) aiding and abetting breach of the covenant of good faith and fair dealing against Nevada Group and Kupiec; (6) conspiracy; (7) theft of trade secrets in violation of NRS 600A.010 et seq.; (8) breach of fiduciary duty by Defendants Pinjuv and Kupiec; (9) aiding and abetting breach of fiduciary duty; (10) conversion; and (11) unjust enrichment.

On June 20, 2018, the Court denied Defendants' motion to dismiss Plaintiffs' claim for theft (misappropriation) of trade secrets pursuant to NRS 600A.010 et seq, and Plaintiffs' breach of contract claims against Defendants Nevada Group, Pinjuv and Kupiec. The Court dismissed all of the other claims. Plaintiffs now seek leave to file a second amended complaint.

1

## DISCUSSION

2    Rule 15(a)(2) of the Federal Rules of Civil Procedures provides that the court may grant a

3    party leave to amend its pleading which should be freely granted when justice so requires.  "This

4    policy is 'to be applied with extreme liberality.'"  *Eminence Capital, LLC v. Aspeon, Inc.*, 316

5    F.3d 1048, 1051 (9th Cir. 2003) (citing *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708,

6    712 (9th Cir. 2001)).  Leave to amend may be denied because of undue delay, bad faith or

7    dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

8    previously allowed, undue prejudice to the opposing party by virtue of allowing the amendment,

9    or futility of amendment.  *Id.* at 1052 (quoting *Foman v. Davis*, 371 U.S. 178, 182, 183 S.Ct. 227

10   (1962)).  The principal issue regarding Plaintiffs' proposed amended complaint is whether it

11   seeks to allege causes of action that are barred as a matter of law and would therefore be futile.

12   
13   ### 1.  Whether Order (ECF No. 167) was a final judgment on the merits which precludes Plaintiffs from amending their complaint.

14   
15   Defendants argue that Order (ECF No. 167) constituted a final judgment on the merits as

16   to the claims dismissed by the Court and that Plaintiffs are precluded from amending their

17   complaint to reallege previously dismissed claims.  Plaintiffs dispute that the claims were

18   dismissed with prejudice.

19   In *Stewart v. U.S. Bancorp*, 297 F.3d 953 (9th Cir. 2002), the plaintiffs filed an action in

20   state court alleging that they were improperly denied an employee severance package under state

21   law.  The defendant removed the action to federal court on the grounds that the claims were

22   governed by ERISA, and then moved to dismiss the complaint for failure to state a claim.  The

23   district court granted the motion to dismiss.  The plaintiffs did not appeal the dismissal order.

24   Instead, they filed a new complaint in federal court alleging ERISA violations arising from the

25   same denial of severance benefits.  The district court dismissed the second action on res judicata

26   grounds.  In affirming the dismissal, the Ninth Circuit noted that the phrase "final judgment on

27   the merits" is often used interchangeably with "dismissal with prejudice."  *Id.* at 956.  The court

28   further stated:

3

Rule 12(b)(6) dismissals are granted based on a plaintiff's failure to plead a cognizable claim. Using this yardstick, a district court analyzes the facts and legal claims in the complaint to determine if the plaintiff has alleged a cause of action. Supreme Court precedent confirms that a dismissal for failure to state a claim under Rule 12(b)(6) is a "judgment on the merits" to which res judicata applies. *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 399 n. 3, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). As the Court said in *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946), "[i]f the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction."

*Id.* at 957.

This case is distinguishable from *Stewart*. The court in *Stewart* dismissed plaintiffs' entire lawsuit. The plaintiffs did not appeal from that order. Instead, they filed an entirely new lawsuit based on the same allegations. In *DiMartini v. Purcell Tire & Rubber Co.*, 2010 WL 11594907 (D.Nev. July 19, 2010), the court refused to bar plaintiff from amending his complaint because of a prior order dismissing some of his claims. The court stated:

Here, defendants argue that the District Court's order was with prejudice and without leave to amend because Rule 41(b) provides that any order not under Rule 41 (with noted exceptions) operates as an adjudication on the merits (#47) (citing *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 399 n.3 (1981)). Defendants are correct that a 12(b)(6) dismissal operates as an adjudication on the merits; however, in this instance, the District Court's order should be distinguished from that in *Moitie*. The district court order at issue in *Moitie* is found at *Weinberg v. Federated Dep't Stores*, 426 F. Supp. 880, 885-86 (D.C. Cal. 1977). In that order, the district court dismissed the plaintiffs' antitrust action "in its entirety" finding that damage to an individual's "pocketbook" did not constitute a sufficient "business interest" and that the plaintiffs did not constitute a cognizable party under the relevant law. *See Weinberg*, 426 F. Supp. at 885, 886. In light of the dismissal, the plaintiffs did not attempt to amend the complaint, but rather they refiled the entire action in state court. *See Moitie*, 452 U.S. at 396. Within the context of its larger analysis as to whether res judicata barred relitigation of unappealed adverse judgments, the Court noted in a footnote that a dismissal under 12(b)(6) is a judgment on the merits. However, the Court did not hold that the dismissal was "on the merits" for the mere failure of the district court to mention "with" or "without" prejudice. The order in that case dismissed the action "in its entirety," and it is clear the plaintiffs could not cure the deficiencies in the complaint. *See Weinberg*, 426 F.Supp. 880, 885-86; *Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) (district court need not state specifically the reason for denial of amendment where it is apparent).

4

In this case, the District Court dismissed the misrepresentation claims because the factual content in the original complaint did not suffice to create a claim. The District Court order does not appear to say that allegations of facts consistent with those in the original complaint could not cure the deficiencies. It only finds that the alleged statements of defendants, as stated in the complaint, are not actionable. Thus, in this case, the mere absence of "with" or "without" language in the District Court's order should not act to prohibit the court from allowing any valid amendments to the pleadings.

Defendants also argue that plaintiffs should be precluded from amendment because they failed to request leave to amend in their opposition and thereby did nothing to avoid the preclusive effect of the District Court's order (#47, p. 8). However, the Ninth Circuit has held that "[i]t is of no consequence that no request to amend the pleading was made in the district court." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (quoting *Schreiber Distributing v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

Thus, the District Court did not explicitly bar plaintiff from seeking leave to amend, and the order does not suggest that plaintiffs would be incapable of amending the complaint to correct the deficiencies. In addition, plaintiffs' failure to request amendment does not vitiate their attempt to amend. For these reasons, the court finds that plaintiffs are not precluded from seeking amendment on the basis of the court order itself.

*Id.* at *3-4.

This Court agrees with the analysis in *DiMartini* and finds it to be generally applicable to Order (ECF No. 167) which dismissed some, but not all, of Plaintiffs' claims. As discussed hereinafter, however, certain claims dismissed by the Court are foreclosed and may not be realleged in an amended complaint.

### 2. Whether leave to amend should be denied based on the dismissal of Plaintiffs' complaint in the New York action.

Defendants also argue that Plaintiffs' motion for leave to file a second amended complaint should be denied on the grounds that their lawsuit is barred as a result of the New York state court's dismissal of Plaintiffs' complaint in that jurisdiction. Defendants have provided a copy of the July 15, 2016 Decision/Order in BGC Partners, Inc. and G&E Acquisition Co. v. Avison Young (Canada) Inc., Avison Young (USA) Inc. and Avison Young-New York, LLC, Supreme Court of the State of New York, County of New York-Part 60, Index No. 652669/2012 E. *Opposition* (ECF No. 206), *Exhibit 5* ("*Decision/Order*"). The New York

5

court's appellate division affirmed and extended the dismissal to Plaintiffs' claims for theft of trade secrets and aiding and abetting the breach of the duty of fidelity. *BGC Partners, Inc. v. Avison Young (Canada) Inc.*, 160 A.D.3d 407, 408, 75 N.Y.S.3d 1, 2 (April 3, 2018). On August 30, 2018, the Appellate Division denied plaintiffs' motion "for reargument of or, in the alternative, for leave to appeal to the Court of Appeals from the decision and order of this Court, entered on April 3, 2018 (Appeal No. 5242)." *Opposition* (ECF No. 206), *Exhibit 4*.

In the New York action, Plaintiffs alleged that the Avison Young defendants induced Grubb & Ellis affiliates to breach their contracts in order to join Avison Young, and induced dozens of Grubb & Ellis brokers to break their employment or independent contractor agreements. Plaintiffs further alleged that the Avison Young Defendants misappropriated Grubb & Ellis trade secrets by inducing and assisting the brokers to conceal and steal trade secrets and business opportunities that belonged to Grubb & Ellis. *Decision/Order*, at 2. Plaintiffs asserted causes of action for tortious interference with contractual relations, tortious interference with prospective business relationships, conspiracy, theft of trade secrets, aiding and abetting the breach of fiduciary duty, aiding and abetting breach of the duty of fidelity, and unjust enrichment. *Id.* The court noted that the claim for tortious interference with contractual relations was based on the allegation that defendants induced the Grubb & Ellis Nevada and South Carolina affiliates to breach their affiliate agreements by terminating the agreements in violation of contractual non-competition provisions and by disclosing trade secrets. *Id.* at 3. The defendants also tortiously interfered with contractual relations by inducing the individual Grubb & Ellis brokers to terminate their broker agreements, disclose trade secrets, and conceal business opportunities from plaintiffs upon their departure. *Id.*

The court stated that under New York law, a plaintiff may recover damages for tortious interference with existing contractual relations even if the defendant engaged in lawful behavior. Where there has been no breach of an existing contract, but only interference with prospective contract rights, however, the plaintiff must show that the defendant employed "wrongful means" which include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degree of economic pressure. Wrongful means does not include

persuasion alone, even if it is knowingly directed at interference with the contract. *Id.* at 4. The court held that plaintiffs sufficiently alleged that the affiliate agreements were existing, enforceable contracts. Therefore, they were not required to allege the use of wrongful means in support of that cause of action. *Id.* at 6. However, Plaintiffs failed to adequately allege that, but for the defendants' conduct, the affiliate agreements would not have been breached. On that basis, the court dismissed plaintiffs' cause of action of tortious interference with contractual relations. *Id.*

Under New York law, a cause of action for interference with an at-will contract is one for interference with prospective contractual relations, and therefore requires proof of wrongful means. The wrongful means must be directed at the party with whom the plaintiff has or seeks to have a relationship---in this case the brokers. Plaintiffs' complaint, however, alleged only that wrongful means were directed at the plaintiffs. The complaint therefore failed to allege a cause of action for interference with prospective contractual relations with the individual brokers. *Id.* at 6-8. For the same reason, the court held that plaintiffs failed to allege a cause of action for tortious interference with prospective business relationships with participants in real estate transactions. *Id.* at 8-9. The court therefore dismissed the causes of action for tortious interference with contractual relations, and tortious interference with prospective business relationships. It also dismissed plaintiffs' cause of action for civil conspiracy because New York does not recognize a cause of action for civil conspiracy. "Put another way, 'a mere conspiracy to commit a tort is never of itself a cause of action. Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort.'" *Id.* at 9 (citation omitted).

The court denied the motion to dismiss the cause of action for theft of trade secrets. The court found that plaintiffs adequately alleged the elements for misappropriation of trade secrets under New York law, including that defendants induced affiliates and brokers to breach confidentiality agreements that protected customer lists and other information about customer preferences and histories, and engaged in a scheme to deprive plaintiffs of commissions and

business opportunities. *Id.* at 15. The court also denied the motion to dismiss plaintiffs' claim for aiding and abetting the breach of the employee brokers' duty of fidelity. *Id.* at 17-19.

On April 3, 2018, the Appellate Division affirmed the dismissal of plaintiffs' causes of action for tortious interference with contractual relations "since plaintiffs' allegations of 'but for' causation is conclusory." *BGC Partners, Inc. v. Avison Young (Canada) Inc.*, 160 A.D.3d at 408, 75 N.Y.S.3d at 2. The court also affirmed the dismissal of plaintiffs causes of action for tortious interference with the broker agreements and with prospective business relations with potential customers, based on the failure to allege wrongful means. *Id.*, 160 A.D.3d at 407. The court held that "[t]he cause of action for theft of trade secrets should also be dismissed since in the circumstances the means by which defendants allegedly lured the brokers away from nonparty Grubb & Ellis, i.e., offering them competitive compensation, are not wrongful or improper (*cf. Schroeder v. Pinterest Inc.*, 133 A.D.3d 12, 28, 17 N.Y.S.3d 678 [1st Dept 2015] [company officer gave confidential and proprietary information to competitor]; *Guard–Life Corp.*, 50 N.Y.2d at 191, 428 N.Y.S.2d 628, 406 N.E.2d 445 [wrongful means include "fraud or misrepresentation, ... and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract"] )." *Id.* at 408. The court further stated:

> Since the offer of competitive compensation is not wrongful or improper, we also dismiss plaintiffs cause of action for aiding and abetting breach of the duty of fidelity (*Kaufman v Cohen*, 307 AD2d 113, 125-126 [1st Dept 2003] [a party may be held liable for aiding and abetting only when they provide substantial assistance to the primary violator. "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur"]). Plaintiffs have not alleged any other means in which defendants substantially assisted the breach other than by offering competitive compensation.

*Id.* at 408.

The doctrine of res judicata bars litigation in a subsequent action of claims that were raised or could have been raised in the prior action. *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001). The doctrine is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3)

8

identity or privity between the parties. *Id.* Defendants argue that all elements of the

doctrine are satisfied in this case. The Plaintiffs base their opposition primarily on the

second element of the doctrine, and argue that the dismissal of New York action was

not a final judgment on merits.

In support of their argument that the second element of res judicata is satisfied,

Defendants rely on *Stewart v. U.S. Bancorp, supra*, and other federal court decisions which hold

that dismissal of an action for failure to state a claim constitutes a judgment on the merits for

purposes of res judicata. Plaintiffs correctly argue, however, that the preclusive effect of a state

court judgment in a federal proceeding is governed by state law. *Intel Corp. v. Advanced Micro

Devices, Inc.*, 12 F.3d 908, 915 (9th Cir. 1993); *Barrett v. Oregon*, 678 Fed.Appx. 472, 473 (9th

Cir. March 1, 2017) (unpublished memorandum); and *Gabor v. Deshler*, 2017 WL 4151042, at

*11 (N.D.Cal. Sept. 19, 2017). Plaintiffs argue that under New York law an order dismissing a

complaint for failure to state a claim upon which relief can be granted is not a decision on the

merits.

In *Pereira v. St. Joseph's Cemetery*, 78 A.D.3d 1141, 912 N.Y.S.2d 121 (2010), the

plaintiff alleged that his personal injury lawsuit was not barred by the exclusive remedy

provision of the workers compensation law because it was within the exception for intentional

torts. The court dismissed the complaint because the allegations did not establish the elements of

an intentional tort. The plaintiff then filed a second action based on intentional tort which

contained rephrased allegations. The court stated that "[a]s a general rule, a dismissal for failure

to state a cause of action is not on the merits and, thus, will not be given res judicata effect.

(citations omitted). Here, our prior dismissal was not on the merits and, consequently, the

doctrine of res judicata was not a bar to the plaintiff's second action." *Id.*, 78 A.D.3d at 1142,

912 N.Y.S.2d at 122. In *Tortura v. Sullivan Papain Block McGrath & Cannavo*, 41 A.D.3d 584,

837 N.Y.S.2d 333 (2007), the plaintiff filed an action for legal malpractice which the court

dismissed on the ground that the claim was not pleaded with the requisite particularity. The

plaintiff then filed a second legal malpractice action. The court held that the second action was

not barred by res judicata or collateral estoppel "since the dismissal of the prior action did not

involve a determination on the merits . . . and the issues were not actually litigated therein[.]" (citations omitted).[1]  In *Cortazar v. Tomasino*, 150 A.D.3d 668, 670-71, 54 N.Y.S.3d 89, 92 (2017), the court held that an order dismissing plaintiffs' claims for breach of contract, injunctive relief, and breach of fiduciary duty was not a dismissal on the merits, and therefore did not have res judicata effect.

The New York court dismissed Plaintiffs causes of action for tortious interference with contractual relations, tortious interference with prospective business relations, misappropriation of trade secrets, and aiding and abetting breach of the duty of fidelity because the complaint failed to allege the necessary factual elements to support those claims.  The court also dismissed Plaintiffs' conspiracy claim because it is not a recognized cause of action under New York law. (As discussed hereinafter, a civil claim for conspiracy is permitted under Nevada law so long as it is based on an underlying wrongful act.)  The New York court's decision was not a judgment on the merits because it did not rule out the possibility that Plaintiffs could allege the necessary elements and facts in a subsequent complaint.  Therefore, Plaintiffs' proposed second amended complaint is not barred by res judicata or collateral estoppel.

### 3.  <u>NUTSA Preemption of noncontractual claims for misappropriation of confidential information.</u>

Count I of the proposed second amended complaint alleges that Defendants Rose, Pinjuv, WCA and the AY Defendants tortiously interfered with contractual relations by inducing others to improperly disclose confidential information in violation of contractual agreements.  *Proposed Second Amended Complaint* (ECF No. 186-1), at ¶¶ 73, 79.  Count II alleges that Defendants violated the Nevada RICO statute by, among other predicate acts, actively encouraging and facilitating the theft of confidential information and trade secrets.  *Id.* at ¶ 86(d), (f).  Count V alleges that Defendants conspired to loot Grubb & Ellis's trade secrets and confidential information.  *Id.* at ¶¶ 101, 102(d), 103.  Count VII alleges that Defendant Kupiec breached his fiduciary duty to Grubb & Ellis by disclosing its confidential information and trade secrets.  *Id.*

---

[1] The court found that the complaint in the second action still failed to sufficiently allege a claim for legal malpractice and the court dismissed it on that basis.  *Id.*

at ¶ 120.  Count VIII alleges that Defendants Rose and the AY Defendants aided and abetted Kupiec's breach of fiduciary duty in disclosing Grubb & Ellis's confidential information and trade secrets.  *Id.* at 125.[2]

NRS 600A.090.1 states that the Nevada Uniform Trade Secrets Act (NUTSA) "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of trade secrets."  "The plain language of NRS 600A.090 precludes a plaintiff from bringing a tort or restitutionary action 'based upon' misappropriation of a trade secret beyond that provided by the UTSA."  *Franz v. Johnson*, 999 P.2d 351, 357 (Nev. 2000).  The Court has already dismissed Plaintiffs' tort claims for misappropriation of trade secrets on the grounds that they are preempted by the NUTSA.  *Order* (ECF No. 167), at 12-15.  Plaintiffs are therefore precluded from alleging such claims in a subsequent amended complaint.  This also applies to claims for breach of fiduciary duty and aiding and abetting the breach of fiduciary duty.  Although a fiduciary duty may arise out of a contractual relationship, a claim for breach of fiduciary duty is grounded in tort.  *Clark v. Lubritz*, 944 P.2d 861, 866-67 (Nev. 1997); *Aliya Medcare Finance, LLC v. Nickell*, 2015 WL 11072179, at (C.D.Cal. Oct. 28, 2015) (declining to strike a punitive damages prayer "since punitive damages are available for breaches of fiduciary duty under Nevada law.").  Claims for breach of fiduciary duty based on the misappropriation of trade secrets are therefore preempted by NRS 600A.090.1.

Plaintiffs, however, also seek to allege noncontractual claims for misappropriation of confidential information that does not qualify as a trade secret.  The Nevada Supreme Court has not clearly stated whether NRS 600A.090.1 preempts a noncontractual claim for misappropriation of confidential information that does not constitute a trade secret.  Courts in other jurisdictions are divided on this issue.

The view that such claims are not preempted by the Uniform Trade Secrets Act is exemplified by the Arizona Supreme Court's decision in *Orca Communications Unlimited, LLC v. Noder*, 337 P.3d 545 (Ariz. 2014).  In holding that the Arizona Uniform Trade Secrets Act

---

[2] Counts III, IV and VI allege claims for breach of contract and misappropriation of trade secrets which the Court allowed in Order (ECF No. 167).

(AUTSA) did not preempt plaintiff's claim for unfair competition based on the misappropriation of confidential information, the court stated that an unambiguous statute will be applied as written, unless doing so would lead to impossible or absurd results. The AUTSA's preemption provision, on its face, displaced only conflicting claims for misappropriation of a trade secret. *Id.* at 547. The court also relied on the principle that if the legislature intends to preempt a cause of action, the law's text or the legislative history should say so explicitly, and a statute should not be interpreted in favor of preemption if there is reasonable doubt about the legislature's intent. *Id.* The court found that there was reasonable doubt regarding the preemption of noncontractual claims for misappropriation of confidential information. *Id.* at 547-48.

The Arizona court also rejected the argument that the refusal to preempt claims for misappropriation of confidential information would lead to absurd results. It noted that there are procedural and substantive differences between a claim under the AUTSA and common law claims that may exist for misappropriation of confidential information. These differences include whether certain issues are decided by the court or jury, the burden of proof required for recovery of punitive damages, and limitations placed on such awards. The prevailing party in an action under the AUTSA is entitled to an award of attorney's fees, whereas such relief may not be available in a common law action. Because of these differences, the existence of noncontractual claims for misappropriation of confidential information are not incompatible with the AUTSA. *Id.* at 548.

The Arizona court was not persuaded that its interpretation would undermine the Uniform Act's purpose of creating a single, uniform action governing the misuse of confidential information. The court stated:

> Although the Uniform Act promotes uniformity regarding the treatment of trade secrets, it says nothing about confidential information generally. Nor does the Uniform Act affect various other claims and remedies. *See* Unif. Trade Secrets Act § 7 cmt. (amended 1985), 14 U.L.A. 463 (2005) (noting that the Uniform Act 'is not a comprehensive statement of civil remedies,' and does not apply to duties imposed by law that are independent of the existence of a trade secret); *see also* A.R.S. § 44–407(B).

*Id.* at 548.  The AUTSA also did not contain the Uniform Act's directive that it "'be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this [Act] among states enacting it.'"  Because other Arizona statutes based on uniform acts include such language, the court found that its absence from the AUTSA suggested that the legislature intentionally omitted it.  *Id.* at 549.

The Hawaii Supreme Court's decision in *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 235 P.3d 310 (Hawaii 2010) represents the opposing view that the Uniform Act preempts noncontractual claims for misappropriation of confidential information.  The court stated that a majority of the courts have held that the UTSA's preemption provision "'abolish[es] all free-standing alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade secret status (*e.g.* idea misappropriation, information piracy, theft of commercial information, *etc.*).'"  *Id.* at 321 (quoting *Hauck Mfg. Co. v. Astec Industries, Inc.*, 375 F.Supp.2d 649, 655 (E.D.Tenn. 2004)).  The court cited the following rationale for the majority view:

> States adopting statutory provisions analogous to the UTSA's section 7 intend that at least some prior law relating to the protection of commercial information be displaced. Permitting litigants in UTSA states to assert common-law claims for the misappropriation or misuse of confidential data would reduce the UTSA to just another basis for recovery and leave prior law effectively untouched. Further, by expressly exempting " contractual remedies, whether or not based upon misappropriation of a trade secret" and "other civil remedies that are not based upon misappropriation of a trade secret" from its preemptive penumbra, the UTSA makes clear that only those claims addressing or arising out of wrongs distinct from pure information piracy survive passage of the trade secret statute. Indeed, contrary interpretations of the UTSA's "Effect on Other Law" provision ... effectively negate the UTSA's goal of promoting uniformity in "trade secrets" law. Additionally, these contrary interpretations render the statutory preemption provision effectively meaningless.

*Id.* at 321-22 (quoting Unikel, *Bridging the "Trade Secret" Gap,* 29 Loy. U. Chi. L.J. at 887–88).

The court stated that the Uniform Act's definition of trade secret is broader and more inclusive than its definition at common law or in Section 757 of the Restatement of Torts. Therefore, information falling outside that broad definition does not deserve legal protection,

1  except to the extent it is governed by a contract between the parties. *Id.* at 322-23. The court

2  also noted that the Hawaii Legislature has directed that uniform acts be interpreted to effectuate

3  their general purpose to make uniform the laws of the states and territories which enact them. *Id.*

4  a 323. The preemption of claims for misappropriation of confidential information comported

5  with this goal of uniformity. *Id.* at 323.

6         The judicial disagreement over the scope of the preemption provision is illustrated by the

7  following cases: In *Mortgage Specialists v. Davey*, 904 A.2d 652, 663-664 (N.H. 2006), the

8  court adopted the majority view, and criticized *Burbank Grease Services, LLC v. Sokolowski*,

9  717 N.W.2d 781 (Wis. 2006) which adopted the plain language interpretation. In *Miller UK Ltd.*

10 *v. Caterpillar, Inc.*, 859 F.Supp.2d 941, 945-47 (N.D.Ill. 2012), a federal district judge criticized

11 *Mortgage Specialists* as "patently flawed," stating that the New Hampshire court had "explicitly

12 ignore[d] the Act's plain language and announce[d] a contrary position because the court

13 believe[d] it would better effect the statutory purpose.' *Id.* at 947. In *Am. Center for Excellence*

14 *v. Community College*, 190 F.Supp.3d 812, 823 (N.D.Ill. 2016), however, another judge in the

15 same district disagreed with *Miller UK Ltd.*, and stated that *Spitz v. Proven Winners N.Am., LLC*,

16 759 F.3d 724, 733 (7th Cir. 2014) supports the preemption of noncontractual claims for

17 misappropriation of confidential information under the Illinois Act.

18         In *Brand Services, LLC v. Irex Corp.*, --- F.3d --- , 2018 WL 6073675 (5th Cir. Nov. 21,

19 2018), the Fifth Circuit recently held that the Louisiana Uniform Trade Secrets Act (LUTSA)

20 does not preempt noncontractual claims for misappropriation of confidential information.

21 Although the LUTSA contained the provision that it be interpreted to effectuate uniformity

22 among the states adopting the Uniform Trade Secrets Act, the court stated that other jurisdictions

23 "have not uniformly applied UTSA's preemption provision; instead, courts have come to varying

24 conclusions about the preemption provision's intended scope. Thus, because there is not enough

25 uniformity among states to predict how the Louisiana Supreme Court would decide the issue, we

26 look to intermediate state court decisions." *Id.* at *4. The court relied on two intermediate

27 appellate decisions which held that the LUTSA does not preempt noncontractual claims for

28

misappropriation of confidential information.  The court stated that these decisions appeared consistent with the plain text and stated purpose of the preemption provision.

In *Frantz v. Johnson*, the Nevada Supreme Court stated:

> We note that our approval of *Hutchison* is not without limitation.  Indeed, we do not agree that the UTSA provides a blanket preemption to all claims that arise from a factual circumstance possibly involving a trade secret.  There may be future instances where a plaintiff will be able to assert tort claims, including intentional interference with prospective advantage and intentional interference with existing contract, that do not depend on the information at issue being deemed a trade secret, and thus are not precluded by the UTSA. *See Powell Products, Inc. v. Marks,* 948 F.Supp. 1469, 1474 (D.Colo.1996). The factual circumstances underlying the claims in this matter, however, are completely dependent on the facts concerning misappropriation of trade secrets, and are therefore barred by the UTSA.

999 P.2d at 357 n. 3.

While the foregoing dictum provides some support for the "plain language" interpretation, it is not determinative.  In particular, the court did not analyze and weigh the conflicting interpretations of the preemption provision.  Another factor potentially supporting the plain language interpretation, however, is the Nevada Legislature's repeal of the uniformity provision, NRS 600A.020, in 1999.  The majority approach may well be the better rule in light of the purposes of the Uniform Trade Secrets Act.  Given the clear conflict among other jurisdictions and some indication in *Frantz* that the Nevada Supreme Court may adopt the plain language interpretation, however, Plaintiffs should be permitted to allege noncontractual claims for misappropriation of confidential information that does not constitute a trade secret.

### 4.  Plaintiffs' proposed Nevada RICO claim.

Plaintiffs' proposed civil RICO claim under NRS 207.470 alleges that Defendants encouraged and facilitated Defendants Kupiec's and Pinjuv's theft of confidential information and trade secrets.  It also alleges that "misappropriation of a trade secret under NUTSA is a Class C Felony and a predicate act."  *Proposed Second Amended Complaint*, at ¶¶ 86(d) and (f).  Nothing in NRS 600A.090.2, however, suggests that a *civil* RICO claim may be predicated on the misappropriation of trade secrets.  This Court therefore believes that such a claim is preempted.  The other allegations of the proposed RICO claim still do not comply with the

1  requirement that "[a] civil RICO pleading must, in that portion of the pleading which describes

2  the criminal acts that the defendant is charged to have committed, contain a sufficiently "plain,

3  concise and definite" statement of the essential facts such that it would provide a person of

4  ordinary understanding with notice of the charges."  *WMCV Phase 3, LLC v. Shushok & McCoy,*

5  *Inc.*,  750 F.Supp.2d 1180, (D.Nev. 2010) (quoting *Hale v. Burkhardt,* 104 Nev. 632, 764 P.2d

6  866, 869–70 (1988)).  Plaintiffs' request for leave to allege the proposed civil RICO claim

7  should therefore be denied.

8       **5. Plaintiffs' proposed claims for breach of fiduciary duty and aiding and abetting.**

9       Plaintiffs' first amended complaint alleged a claim for breach of fiduciary duty against

10  Defendants Pinjuv, Kupiec and Nevada Group and a claim for aiding and abetting the breach of

11  fiduciary duty against all Defendants.  *First Amended Complaint* (ECF No. 65), Counts X and

12  XI.  Defendants' motion to dismiss argued that these claims should be dismissed because

13  Plaintiffs failed to allege that Defendants Pinjuv and Kupiec were employees of Grubb & Ellis,

14  and failed to show that they had any association with the Plaintiffs that would support a fiduciary

15  duty.  *Motion to Dismiss* (ECF No. 66), at 17-19.  Plaintiffs withdrew these claims in response to

16  Defendant's motion to dismiss.  *Response to Motion to Dismiss* (ECF No. 72) at n. 2; *Reporter's*

17  *Transcript of Proceedings* (ECF No. 119), at  22:23-23:7; and *Order* (ECF No. 167) at 1:24-26.

18  Despite having withdrawn these claims, Plaintiffs now propose to allege a claim for breach of

19  fiduciary duty against Defendant Kupiec and a claim for aiding and abetting his breach of

20  fiduciary duty against Defendants Rose and the AY Defendants.  The proposed second amended

21  complaint alleges that Kupiec was an employee of Grubb & Ellis and breached his fiduciary

22  duties to Grubb & Ellis and to Plaintiffs as its successors-in-interest.[3]

23       Defendants argue that Plaintiffs should be barred from asserting these claims based on

24  their previous withdrawal.  Defendants cite decisions in which district courts have denied a

25  plaintiff's motion to voluntarily dismiss a claim or lawsuit without prejudice in order to avoid an

26

27  ───────────────
   [3] In *Metlife Bank, N.A. v. Evergreen Moneysource Mortg. Co.*, 2010 WL 2541729, at *2 (D.Nev. June 17,
   2010), the district court, relying on *White Cap Industries v. Ruppert*, 67 P.3d 318, 319-20 (Nev. 2003),
28  stated that employees owe their employers a duty of loyalty and may be sued for breach of fiduciary duty.

1   adverse decision on the merits.  *See Opposition* (ECF No. 206), at 11 (citing *Williams v.*

2   *Rosenblatt, Inc.*, 2015 WL 6509112, at *1 (S.D.N.Y. Oct. 28, 2015) and *Galasso v. Eisman,*

3   *Zucker Klein & Ruttenberg*, 310 F.Supp.2d 569, 572 (S.D.N.Y. 2004)).  In this case, Plaintiffs

4   did not request permission to dismiss the breach of fiduciary claims without prejudice.  They

5   simply withdrew them in the face of Defendants' motion to dismiss.  Under these circumstances,

6   Plaintiffs should be deemed to have waived the claims or should be judicially estopped from

7   realleging them.

8        In *New Hampshire v. Maine*, 532 U.S. 742, 749-51, 121 S.Ct. 1808, 1814-15 (2000), the

9   Court stated that the doctrine of judicial estoppel '"generally prevents a party from prevailing in

10  one phase of a case on an argument and then relying on a contrary argument to prevail in another

11  phase."'  (citation omitted).  The purpose of the doctrine is to protect the integrity of the judicial

12  process by prohibiting parties from deliberately changing positions according the exigencies of

13  the moment.  *Id*. (citing *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982) and

14  *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1992)).  The Court noted that the

15  circumstances under which judicial estoppel may appropriately be invoked are probably not

16  reducible to any general formulation of the principle.  The Court discussed the factors that are

17  typically applied, but stated that it did not intend to establish inflexible prerequisites or an

18  exhaustive formula for determining when judicial estoppel applies.  *Id.*, 532 U.S. at 750-51, 121

19  S.Ct. at 1815.  *See also Milton H. Greene Archives v. Marilyn Monroe LLC*, 692 F.3d 983, 995

20  (9th Cir. 2012).  Although the circumstances in this case may not be typical of those in which

21  judicial estoppel is applied, they fit within the purpose of the doctrine---to prevent parties from

22  playing fast and loose with the courts, and to prevent the improper use of the judicial machinery.

23  *New Hampshire v. Maine*, 532 U.S. at 750, 121 S.Ct. at 1814-15.  Plaintiffs had the opportunity

24  to demonstrate that they had viable claims for breach of fiduciary duty.  Instead of doing so, they

25  withdrew the claims.  Plaintiffs should therefore be barred from alleging claims for breach of

26  fiduciary duty and for aiding abetting the breach of that duty on the grounds that they waived

27  those claims or are judicially estopped from asserting them.

28  . . .

1

### 6.  <u>Proposed claims for tortious interference with contractual relations and civil conspiracy.</u>

2

Plaintiffs proposed second amended complaint seeks to allege claims for tortious

3

interference with contractual relationship and conspiracy.  *Proposed Second Amended*

4

*Complaint*, at ¶¶ 70-81, 100-104.  To prevail on a claim for intentional interference with

5

contractual relations, a plaintiff must prove: (1) a valid and existing contract; (2) the defendant's

6

knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual

7

relationship; (4) actual disruption of the contract; and (5) resulting damage.  *J.J. Indus., LLC v.*

8

*Bennett*, 71 P.3d 1264, 1267 (Nev. 2003).  As to the third element, a plaintiff must prove that

9

defendant actually intended to induce the contracting party to breach its contact with the

10

Plaintiff.  *Id.* at 1268.  An actionable conspiracy consists of a combination of two or more

11

persons who, by some concerted action, intend to accomplish an unlawful objective for the

12

purpose of harming another, and damage resulting from the act or acts.  *Sutherland v. Gross*, 772

13

P.2d 1287, 1290 (Nev. 1989); *Hilton Hotels v. Butch Lewis Productions*, 862 P.2d 1207, 1210

14

(Nev. 1993).  Conspiracy is not an independent cause of action; it must arise from some

15

underlying wrong.  *Paul Steelman Limited v. HKS, Inc.*, 2007 WL 295610, at *3 (D.Nev. Jan. 26,

16

2007) (citing *Rusheen v. Cohen,* 128 P.3d 713, 722 (Cal. 2006) and C.J.S. CONSPIRACY § 8

17

(2006)).  A claim for intentional interference with contractual relations may support a claim for

18

conspiracy.  *Chocolate Magic Las Vegas, LLC v. Ford*, 2018 WL 4387623, at *6-7 (D.Nev. Sept.

19

14, 2018).

20

In dismissing Plaintiffs' claim for tortious interference with contractual relations in their

21

first amended complaint, the Court stated that some of the acts occurred after Grubb & Ellis filed

22

for bankruptcy, and for which Plaintiffs lacked standing to sue.  The remaining allegations were

23

based on Defendants' improper disclosure of trade secrets which were preempted by NRS

24

600A.090.  *Order* (ECF No. 167), at 14.  In dismissing the conspiracy claim, the Court stated

25

that "it would not permit co-conspirator liability based only upon underlying contract violations.

26

To do so would effectively permit transforming contract claims into tort claims for tort damages,

27

without meeting the requirements for a tortious breach of the implied covenant of good faith and

28

fair dealing." *Id.* at 21.  This statement appears to be directed at a conspiracy claim against a contracting party.  A person cannot be held liable in tort for intentionally interfering with his own contract.  *Mintz v. Blue Cross of Calif.*, 172 Cal.App.4th 1594, 1607 n. 10, 92 Cal.Rptr.3d 422, 432 n. 10 (Cal. App. 2009); *Woods v. Fox Broadcasting Sub., Inc.*, 129 Cal.App.4th 344, 350, 28 Cal.Rptr.3d 463 (Cal.App. 2005); and *Hoggett v. Brown*, 971 S.W.2d 472, 492 (Tex. App. 1997).  However, a conspiracy claim can be brought against two or more persons who conspire to cause a third person to breach his contract.  *Chocolate Magic Las Vegas, LLC*, *supra*, at *6.

Plaintiffs' proposed second amended complaint alleges that Defendants' tortiously interfered with Grubb & Ellis's contractual relations prior to its bankruptcy.  Plaintiffs do not make the mistake of realleging a claim for tortious interference based on the misappropriation of trade secrets.  They allege, however, that Defendants conspired to facilitate "the theft and disclosure of Grubb & Ellis confidential information *and trade secrets* on multiple occasions" (emphasis added), and that the conspiracy included the looting of Grubb & Ellis's trade secrets. *Proposed Second Amended Complaint*, at ¶¶ 100, 102(d), 103.  The Court has already dismissed Plaintiffs' claim for conspiracy based on misappropriation of trade secrets and it cannot be reasserted in an amended complaint.

### 7. Joinder of Western Alliance Commercial Inc. as an additional defendant.

Plaintiffs seek to join Western Alliance Commercial Inc. (WCA) as an additional defendant based on its status as the corporate successor of Defendant The Nevada Commercial Group, and a repository for its assets.  *Proposed Second Amended Complaint*, at ¶ 19.  Plaintiffs seek to allege that WCA tortiously interfered with the Nevada Group's affiliate agreement with Grubb & Ellis by inducing termination of that agreement.  *Proposed Amended Complaint*, at ¶¶ 71-81; *Motion* (ECF No. 186), at 7.  As Nevada Group's successor-in-interest, WGA presumably stands in its shoes as a party to the affiliate agreement.  In that capacity, it cannot be liable in tort for intentionally interfering with its own contract.  Therefore, WGA is not a proper defendant on a claim for intentional interference with the Nevada Group's affiliate agreement.

. . .

**CONCLUSION**

Plaintiffs should be permitted to file a second amended complaint to allege claims for intentional interference with contractual relations and civil conspiracy based on the Defendants' misappropriation of confidential information not rising to the level of a trade secret. Plaintiffs' proposed second amended complaint must be denied, however, because it seeks to allege claims that the Court has already determined are invalid, seeks to allege other claims that are contrary to law, and seeks to allege claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty that it previously withdrew and should be deemed to have waived or be estopped from asserting. Accordingly,

**ORDER AND RECOMMENDATION**

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Leave to File Second Amended Complaint (ECF No. 186) is **denied**, without prejudice, to Plaintiffs right to file a second amended complaint alleging claims for intentional interference with contractual relations based on the Defendants' misappropriation of confidential information not rising to the level of a trade secret, and a claim for conspiracy based on intentional interference with contractual relations by misappropriation of confidential information not rising to the level of a trade secret.

**IT IS HEREBY RECOMMMENDED** that Plaintiffs' proposed claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty be **denied**, with prejudice, because Plaintiffs waived those claims and is judicially estopped from alleging them in an amended complaint. The claims are also preempted to the extent they are based on the misappropriation of trade secrets.

**IT IS FURTHER HEREBY RECOMMMENDED** that Plaintiffs' proposed claim for violation of the Nevada RICO statute be denied, with prejudice, to the extent that a state law RICO claim may not be predicated on the misappropriation of trade secrets.

. . .

. . .

. . .

. . .

20

**IT IS FURTHER HEREBY RECOMMMENDED** that Plaintiff's proposed addition of Western Alliance Commercial Inc. (WCA) as an additional defendant to their proposed claim for tortious interference with contractual relations be **denied,** with prejudice, because a person cannot be liable for intentionally interfering with its own contract.

**DATED** this 7th day of January, 2019.

_George Foley Jr._

_____

**GEORGE FOLEY, JR.**
**UNITED STATES MAGISTRATE JUDGE**