Todd L. Bice, Esq.,
Jordan T. Smith, Esq.
**Pisanelli Bice PLLC**
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone: (702) 214-2100
Facsimile: (702) 214-2101
tlb@pisanellibice.com
jts@pisanellibice.com

and

F. Thomas Hecht, Illinois Bar No. 1168606
Tina B. Solis, Illinois Bar No. 6242461
Seth A. Horvath, Illinois Bar No. 6283110
**Nixon Peabody LLP**
70 W. Madison Street, Suite 3500
Chicago, Illinois 60602
Telephone: (312) 977-4400
Facsimile: (844) 560-8137
fthecht@nixonpeabody.com
tbsolis@nixonpeabody.com
sahorvath@nixonpeabody.com

*Attorneys for Plaintiffs Newmark Group, Inc.,
G&E Acquisition Company, LLC, and
BGC Real Estate of Nevada LLC*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| NEWMARK GROUP, INC., G&E ACQUISITION COMPANY, LLC, and BGC REAL ESTATE OF NEVADA, LLC, | CASE NO.: 2:15-cv-00531-RFB-EJY |
| | **STIPULATION REGARDING DISCLOSURE OF ELECTRONICALLY STORED INFORMATION** |
| AVISON YOUNG (CANADA) INC.; AVISON YOUNG (USA) INC.; AVISON YOUNG - NEVADA, LLC, MARK ROSE, THE NEVADA COMMERCIAL GROUP, JOHN PINJUV, and JOSEPH KUPIEC; DOES 1 through 5; and ROE BUSINESS ENTITIES 6 through 10 | |

The undersigned parties, through their respective counsel, stipulate and agree to the terms set forth in this stipulation regarding disclosure of electronically stored information ("Order"):

**1.      DEFINITIONS**

The following terms in this Order will have the agreed-upon meanings set forth below:

**(a)      Custodian:** "Custodian" means a person who has custody and control over electronic information.

**(b)      Source:** "Source" means all locally accessible physical devices and cloud-based accounts designed to store, transmit or otherwise interact with electronic information. Examples of "Sources" include, but are not limited to, forensic image files, desktop computers, laptop computers, smartphones, file servers, USB drives, DVDs, third party email accounts, social media accounts, and third party cloud file storage services.

**(c)      Data:** "Data" means electronic information.

**(d)      Deduplication ("Deduping"):** "Deduplication" means the process of comparing electronic records based on their MD5 Hash Value or equivalent and removing and identifying, to the extent possible, duplicate records within the data set.

**(e)      Document Number:** "Document Number" means a legible, unique page identifier. Each file must be unique and match the Bates number of the page. The file name should not contain any blank spaces and should be zero padded (for example ABC0000001).

**(f)      Documents of Limited Accessibility:** "Documents of Limited Accessibility" are Data that are not reasonably accessible and may include Electronic Information created or used by electronic media no longer in use, maintained in redundant electronic-storage media, or for which retrieval involves substantial cost.

**(g)      Electronic Information:** "Electronic Information" means information stored in electronic media, including network drives and email servers.

**(h)** **Email:** "Email" means an electronic means for communicating information under specified conditions, generally in the form of text, through systems that will send, store, process, and receive information and in which messages are held in storage until the addressee accesses them.

**(i)** **Format:** "Format" means the internal structure of a file that defines the way the file is stored and used.

**(j)** **Keyword Search:** "Keyword Search" means a search of the text of Electronic Information for one or more words or sets of characters or numbers that are specified by a user.

**(k)** **Load File:** "Load File" means a file that relates to a set of scanned images and indicates where individual pages belong together as documents. A load file may also contain data relevant to the individual documents (e.g., metadata or coded data).

**(l)** **Metadata:** "Metadata" means information about a particular data set or document that describes, among other things, how, when, and by whom it was created, accessed, modified, sent, and received, and how it is formatted.

**(m)** **Native Format:** "Native Format" means the file structure of Electronic Information defined by the original creating application.

**(n)** **Online Repository:** "Online Repository" means a secure database of documents that makes documents accessible, searchable, and reviewable via the Internet.

**(o)** **Parties or Party:** "Party" or "Parties" means each Party to this Litigation. The Parties in this action share significant overlap with the parties to the actions listed on Exhibit B to the Protective Order entered on August 31, 2017 (ECF No. 110), as modified on July 18, 2018 (ECF No. 163), and nothing in this Order will restrict the Parties to this Litigation from working in concert to maximize the efficiency of discovery with any or all parties to the actions listed on Exhibit B of the Protective Order.

**(p)** **Producing Party:** "Producing Party" means a Party that produces Electronic Information.

**(q)** **Production Media:** "Production Media" means documents on any readily accessible computer or electronic media the Parties may agree upon, including CD-ROM, DVD, or external hard drive (with standard PC-compatible interface).

**(r)** **Receiving Party:** "Receiving Party" means a Party to whom Electronic Information is produced.

**(s)** **Relevant Electronic Information:** "Relevant Electronic Information" means Electronic Information that is material and necessary in prosecuting or defending this Litigation, within the meaning of Rules 26, 33, and 34 of the Federal Rules of Civil Procedure.

**(t)** **This Litigation:** This "Litigation" means the case captioned *Newmark Group, Inc., et al v. Avison Young (Canada) Inc., et al.*, Case No. 2:15-cv-00531-RFB-EJY, which is currently pending in the United States District Court for the District of Nevada.

**(u)** **TIFF:** "TIFF" (Tagged Image File Format) refers to a particular graphic-file format for storing bit-mapped images, with multiple compression formats and resolutions.

**(v)** **Paper Discovery:** "Paper Discovery" means responsive documents and things under Rule 34 of the Federal Rules of Civil Procedure that were originally created in paper format and that may or may not have been converted into digital format.

**2.** **SCOPE**

**(a)** **General:** The procedures and protocols set forth in this Order will govern the production of Electronic Information in this Litigation.

**(b)** **Paper Discovery:** Each Producing Party has an independent and separate obligation to produce Paper Discovery responsive to a Receiving Party's discovery requests and agrees to produce Paper Discovery in TIFF format. Upon a request by the Receiving Party and a

showing of good cause (e.g., problems with legibility or formatting), the Producing Party must make the original paper documents available for inspection at a mutually agreeable time and place.

**(c)** **Limitations:** This Order provides a general framework for producing Electronic Information. This Order does not establish any agreement as to either the temporal or subject-matter scope of discovery.

**(d)** **Disputes:** The Parties will meet and confer to resolve any procedures or disputes arising under this Order. In the event the Parties cannot reach agreement on a disputed matter, the Parties will submit the matter to the Court in this Litigation.

**3.** **COST CONTAINMENT**

**(a)** **Objective:** The procedures in this Order pertaining to producing Electronic Information are subject to developing reasonable and appropriate strategies to minimize the cost and burden that may be associated with producing Data.

**(b)** **Keyword Searches:** The Parties will use Keyword Searches using agreed-upon keywords specific to each Party.

**4.** **PRODUCTION**

**(a)** **Document-Production Format:** The following provisions will generally govern the production format and procedure for Electronic Information and are subject to the other provisions in the Order:

   (i) <u>Hard-Copy Documents.</u> The Producing Party will scan hard-copy documents to images, which will be produced as black-and-white, Group IV compression, single-page TIFF images, at not less than 300 dpi resolution. Color images will be produced only if necessary to understand the document, and all Parties reserve the right to produce the files in Native Format rather than by color images. The Producing Party will produce a delimited text file to accompany the TIFF images,

which will indicate document breaks. If a document is more than one page, the unitization of the document and any attachments or affixed notes will be maintained as it existed in the original when creating the image file. Images will be saved into a unique sequentially numbered folder (i.e. 001, 002, 003), and each folder will not consist of more than 5,000 images. When producing TIFF image files, the Producing Party will also produce corresponding Optical Character Recognition ("OCR") files as multi-page ASCII text ("TXT") files whose file name is identical to the corresponding first TIFF image file of the corresponding images for a Document. The OCR files will be produced in a separate folder. Reasonable efforts will be used to scan the pages at or near their original size and to display Bates numbers and confidentiality designations without obscuring text. Physically oversized originals, however, may appear reduced or may be produced as hard-copy documents. To the extent a physically oversized document cannot be readily deciphered if scanned and reduced into a TIFF image, it will be produced as a hard-copy document, and a placeholder TIFF will be produced indicating the Bates number of the oversized hard-copy document and confidentiality designation if applicable. Hard-copy documents will be produced as maintained in the usual course of business, including maintaining, to the extent reasonably possible, attachments, notes, etc.

(ii) <u>Electronic Documents.</u> Electronic documents may be deduplicated across custodians with all custodians of a document included in the All Custodian field as provided in Exhibit A. The Parties agree that, for hard-copy documents, they will populate the field with the term "Hard-Copy Document." The electronic documents will be produced as black-and-white, Group IV compression, single-page TIFF images, with not less than 300 dpi resolution. The Producing Party will produce as

native files Microsoft Excel spreadsheets, Microsoft PowerPoint files, and other electronic documents that cannot be converted to TIFF format in readily usable and legible format. Color images will be produced only if necessary to understand the Document, and all Parties reserve the right to produce the files in Native Format rather than by color images. The Parties will produce a delimited text file to accompany the TIFF images, which will indicate Document breaks. For any documents produced in a TIFF format that contain track changes, the images must be produced in a manner that displays all track changes and any associated notes or comments.

A Producing Party will, to the extent the information is reasonably ascertainable and accessible, identify the Custodians and Sources from which each electronic document was harvested. To the extent email data is stored, or only accessible, in an archive system (e.g., archived email that will not be swept up during a pull of a given custodian's live email account), the Parties agree to search the archive system as part of any collections and productions. Archives, as that term is used in the preceding sentence, do not include back-up tapes.

With each production of Documents, the Parties will produce an ASCII formatted DAT file, delimited as set forth in this Order, containing the extracted Metadata for each document and accompanied by an OPT file (the "Load Files"). The Load Files will include the fields and content set forth in Exhibit A to this Order. The Load Files produced by the Producing Party will contain the standard Concordance delimiters. However, the Parties agree that a Party may request to receive additional Metadata upon a showing of good cause. The Producing Party will take reasonable steps to produce relevant, nonprivileged attachments to

electronic documents contemporaneously and in sequential order. In the harvesting of electronic documents, document relationships will be preserved. Related nonprivileged documents within a family will be produced, and any family documents containing privileged information that are withheld will be identified with a Bates-numbered document placeholder TIFF within the set of family documents. All Producing Parties will provide attachment-range information as provided in Exhibit A.

For Documents that are redacted, the type of redaction (personal information; privileged information; nonresponsive information; nonrelevant, nonresponsive trade-secret information; or nonrelevant, nonresponsive confidential business information) will be noted in the Load File in the field "Redacted." The term "Redacted" will be reflected on the images to indicate where a redaction occurs as well as in the multipage text file containing OCR for searching purposes.

(iii) <u>Searchable Text.</u> To the extent a document has extracted text, the Parties will produce a multipage text file for each produced document reflecting the full text that has been electronically extracted from the original, native electronic files ("Extracted Text"). The Extracted Text will be provided at the same time as the Load File and be placed in a separate folder. For redacted documents, instead of Extracted Text, OCR will be run on each document post-redaction and provided as a multipage text file.

**(b)** **<u>Production of Documents in Native Format</u>:** After the initial production of electronic documents in TIFF image file format is complete, the Parties reserve the right to request the production of electronic documents in Native Format. A Party must make a showing of good cause (e.g., problems with legibility or formatting or a need for additional metadata) for producing

the electronic documents in their Native Format, and the parties' right to seek cost-sharing for such requests is preserved. In the event a request is made for producing Native Format documents, the Parties will negotiate in good faith about the timing and method of the production. No image file or Native Format document will be intentionally manipulated to change how the source document would have appeared if printed out to a printer attached to a computer viewing the file. Documents produced in Native Format will be produced in the manner the files were maintained electronically in the ordinary course of business. A placeholder TIFF will be produced indicating the Bates number of the file and confidentiality designation if applicable. Files will be renamed to incorporate Bates number schema into the file name, followed by original document extension (e.g., ".doc," ".xls," etc.). The Parties will produce as part of the Load File the original file name, the corresponding Bates number, and the associated hash value. If the production of databases other than a Microsoft Access database is requested, the Parties will meet and confer as to the propriety of the request and the method of production.

(c) **Appearance and Content:** Subject to any appropriate redaction, each document's electronic image will convey the same information and image as the original document. Documents that present imaging or formatting problems will be identified, and the Parties will meet and confer in an attempt to resolve any problems.

(d) **Document Unitization:** If a document is more than one page, the unitization of the document and any attachments or affixed notes will be maintained as it existed in the original file or computer of the Producing Party. If unitization cannot be maintained, the original unitization will be noted, documented in a Load File or otherwise electronically tracked.

(e) **Color:** Documents containing color need not be originally produced in color. If an original document contains color necessary to understand the meaning or content of the document, however, the Producing Party will honor reasonable requests for either producing an original

document for inspection and copying or producing a color image of the document. The Receiving Party will be responsible for the reasonable cost of color copying.

**(f)** **Document Numbering for TIFF Images:** Each page of a produced document, produced in TIFF file format will have a legible, unique Document Number electronically endorsed onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. The Document Number for each document will be created so as to identify the Producing Party and the Document Number. Each Party will have a unique identifying name. Each page of each production will have a unique number of up to seven digits. Any redacted page will also include the word "Redacted" endorsed on the TIFF image at the location of the redaction(s).

**(g)** **Production Media:** The Producing Party will produce documents on any readily accessible computer or electronic media the Parties may agree upon, including CD-ROM, DVD, external hard drive (with standard PC-compatible interface or access to a secure Online Repository agreed upon by the Parties). Each piece of Production Media will be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media as well as the sequence of the material in that production. An example of this convention is "Plaintiff Production March 1, 2006 PLTF 0000123–PLTF 0000456." Production Media will include text referencing the case name and number. Further, any replacement Production Media will cross-reference the original Production Media and clearly identify that it is a replacement and cross-reference the document number range that is being replaced.

    (i) Load Files. With each production, the Producing Party will provide a standard Concordance (.opt and .dat) delimiter Load File indicating the beginning and ending Bates Numbers of all Document families. The production material should be produced in the following folder structure:



**(h)** **Decryption and Passwords:** To the extent that decryption or access passwords are necessary to unlock any Data in its Native Format, including but not limited to email passwords and file decryption passwords, the Parties will meet and confer to develop appropriate steps to allow access to the Data without compromising confidentiality, security, or proprietary interests.

**(i)** **Redaction:** For any file produced in Native Format that is redacted, the Parties will meet and confer with respect to suitable techniques and methods of redaction to preserve the integrity of the Data while protecting information subject to redaction.

**(j)** **Documents of Limited Accessibility:** If a Producing Party contends that any Electronic Information is of limited accessibility, that Party will identify the Data with reasonable particularity and will provide the requesting Party with its basis for declining to produce the Electronic Information. The Parties will negotiate in good faith concerning producing any Documents of Limited Accessibility.

If the Parties are unable to reach agreement, the Parties will submit any dispute to the Court and the Court will determine what burdens may be imposed upon the Producing or Receiving Parties in order to resolve the dispute and whether or to what extent the costs of the production will be borne by the Producing or Receiving Parties.

5. **METADATA, REDACTION, LANGUAGE, AND COOPERATION**

**(a)** **Metadata:** The Parties' intent is that when a request for Metadata from a file in Native Format is made in addition to what is required under Section 4(a)(ii) and Exhibit A, and production is agreed to or ordered, to the extent it exists and is available, all additional Metadata from that file in Native Format will be produced. The Parties reserve the right to challenge the reasonableness of a producing party's efforts to preserve and/or locate any missing Metadata.

**(b)** **English Language:** To the extent any Data exists in more than one language, the Data will be produced in English, if available. If no English version of a document is available, the Producing Party does not have an obligation to produce an English translation of a document.

**(c)** **Cooperation:** The Parties will, as necessary, meet and confer to exchange information regarding issues associated with any electronic production of Electronic Information.

**(d)** **Variance:** Any practice or procedure set forth in this Order may be varied by written agreement of the Parties when the variance is deemed appropriate to facilitate the timely and economical exchange of Electronic Information.

**(e)** **Duplicate Production Not Required:** A Party producing Electronic Information in electronic form need not produce the same document in paper format.

6. **TIMING OF ELECTRONIC DISCOVERY**

Any Party under an obligation to produce Electronic Information will commence producing the Electronic Information and proceed with producing the Electronic Information in a timely manner consistent with time considerations to be developed by the Parties.

7. **CONFIDENTIAL INFORMATION & PRIVILEGE**

The Parties have entered into a separate Protective Order dated August 31, 2017, as modified on July 18, 2018 that governs the treatment of confidential material, including submitting confidential material to the Court and recourse for inadvertently producing

confidential or privileged information. The Parties will enter into a separate agreement regarding the identification (including logging) and redaction of privileged documents.

Dated: November 4, 2019      IT IS SO ORDERED:

_____
U.S. MAGISTRATE JUDGE ELAYNA J. YOUCHAH

**Order agreed to by:**

By:   /s/ Tina B. Solis                                   By:   /s/ Nathaniel J. Kritzer

Todd L. Bice, Esq.,
Jordan T. Smith, Esq.
**Pisanelli Bice PLLC**
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone: (702) 214-2100
Facsimile: (702) 214-2101
tlb@pisanellibice.com
jts@pisanellibice.com

and

F. Thomas Hecht
Tina B. Solis
Seth A. Horvath
**Nixon Peabody LLP**
70 W. Madison Street, Suite 3500
Chicago, Illinois 60602
Telephone: (312) 977-4400
Facsimile: (844) 560-8137
fthecht@nixonpeabody.com
tbsolis@nixonpeabody.com
sahorvath@nixonpeabody.com

*Attorneys for Plaintiffs Newmark Group, Inc., G&E Acquisition Company, LLC, and BGC Real Estate of Nevada LLC*

Robert S. Larsen
Wing Y. Wong
**Gordon Rees Scully Mansukhani, LLP**
300 S. 4th St., Suite 1550
Las Vegas, Nevada 89101
Tel.  (702) 577-9301
Fax.  (702) 255-2858
rlarsen@gordonrees.com
wwong@grsm.com

and

Nathaniel J. Kritzer
**Steptoe & Johnson LLP**
1114 Avenue of the Americas
New York, New York 10036
Tel. (212) 378-7535
Fax (212) 506-3950
nkritzer@steptoe.com

*Attorneys for Defendants Avison Young (Canada) Inc., Avison Young (USA) Inc., Avison Young-Nevada LLC, Mark Rose, Joseph Kupiec, The Nevada Commercial Group, and John Pinjuv*

# EXHIBIT A

## Production Load File Fields

| FIELD | DESCRIPTION | ESI | Non-ESI (converted to Load Files) |
|---|---|---|---|
| BEGBATES | Beginning Bates number assigned to each document. Format XXXXX00000001. | Y | Y |
| ENDBATES | Ending Bates number assigned to each document. Format XXXXX00000001. | Y | Y |
| BEGATTACH | Beginning Bates number assigned to the group of documents to which the parent document and any attachment documents are associated. Format XXXXX00000001. | Y | Y |
| ENDATTACH | Ending Bates number assigned to the group of documents to which the parent document and any attachment documents are associated. Format XXXXX00000001. | Y | Y |
| PARENT ID | Beginning Bates number of any parent document. | Y | Y |
| ATTACHMENT IDS | Beginning Bates number(s) of any attached document. | Y | Y |
| PAGE COUNT | Number of pages per document. | Y | Y |
| DATE CREATED | The date extracted from a field that contains the date a file was created. Formatted as MM/DD/YYYY. | Y | N |
| DATE LAST MODIFIED | The date extracted from a field that contains the date a file was last modified. Formatted as MM/DD/YYYY. | Y | N |

| FIELD | DESCRIPTION | ESI | Non-ESI (converted to Load Files) |
|---|---|---|---|
| DATE SENT | The date an email was sent. Formatted as MM/DD/YYYY. | Y | N |
| TIME SENT | The time an email was sent. Formatted as HH:MM:SS in Eastern military time. | Y | N |
| DATE RECEIVED | The date an email was received. Formatted as MM/DD/YYYY. | Y | N |
| TIME RECEIVED | The time an email was received. Formatted as HH:MM:SS in Eastern military time. | Y | N |
| RECORDTYPE | The type of document—Scan Paper; Email; Email Attachment; Loose Edoc. | Y | Y |
| FILENAME | The original filename of the electronic file. | Y | N |
| DOCTITLE | The title of an electronic document. | Y | N |
| DOCAUTHOR | The author of an electronic file. | Y | N |
| SUBJECT | The subject line of the email. | Y | N |
| FROM | The originator of the email message. | Y | N |
| RECIPIENT | The recipient(s) of an email. | Y | N |
| CC | Names of copied recipients of an email. | Y | N |
| BCC | Names of blind copied recipients of an email. | Y | N |

| FIELD | DESCRIPTION | ESI | Non-ESI (converted to Load Files) |
|---|---|---|---|
| ALL CUSTODIAN | Name of any individual, department, or server where the file was stored or kept (delimited with semicolon). | Y | Y |
| CUSTODIAN | Name of the individual(s), department, or server where the file was stored or kept. | Y | Y |
| NATIVE | Link to Native File. | Y | N |
| TEXTPATH | Link to Extracted Text or OCR Text File. | Y | Y |
| REDACTION | If a document has been redacted, indicates the type of redaction—Personal Information, Privilege, Nonresponsive. | Y | Y |
| CONFIDENTIAL | Confidentiality Designation. | Y | Y |
| PARENT DATE | Email sent date propagated to its attachments. | Y | N |
| MD5 HASH VALUE | An algorithm that is used to verify data integrity and uniqueness. | Y | N |
| DOCUMENT LAST PRINTED DATE | The date that the document was last printed. | Y | N |

| FIELD | DESCRIPTION | ESI | Non-ESI (converted to Load Files) |
|---|---|---|---|
| DOCUMENT LAST PRINTED TIME | The time that the document was last printed. | Y | N |
| DOCUMENT EDITING TIME | The amount of time spent editing the document. | Y | N |
| DOCUMENT COMPANY | The company to which the software used to create the document was licensed. | Y | N |
| DOCUMENT REVISION NUMBER | The version number of the document. | Y | N |
| MS AUTHOR | The Microsoft embedded "MS Author" value. | Y | N |
| MS COMPANY | The Microsoft embedded "MS Company" value. | Y | N |
| LAST MODIFIED BY | The Microsoft embedded person value who last modified a document. | Y | N |
| LAST PRINTED BY | The Microsoft embedded person value who last printed a document. | Y | N |
| LAST SAVED BY | The Microsoft embedded person value who last saved a document. | Y | N |