UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

NEWMARK GROUP, INC., G&E
ACQUISITION COMPANY, LLC, and BGC
REAL ESTATE OF NEVADA, LLC,

        Plaintiffs,

v.

AVISON YOUNG (CANADA) INC.;
AVISON YOUNG (USA) INC.; AVISON
YOUNG-NEVADA, LLC, MARK ROSE,
THE NEVADA COMMERCIAL GROUP,
JOHN PINJUV, and JOSEPH KUPIEC; DOES
1 through 5; and ROE BUSINESS ENTITIES
6 through 10,

        Defendants.

Case No. 2:15-cv-00531-RFB-EJY

**ORDER**

    The parties and the Court are well versed in the facts and allegations generally underlying this dispute. These facts and allegations are not repeated here except as necessary.

    The instant issue that comes before the Court arises from the September 9, 2021 Rule 30(b)(6) deposition of Plaintiff Newmark Group Inc.'s ("Newmark") corporate representative. The question posed is to what extent—in terms of topics and other ministerial parameter—Defendants may take a second day of Newmark's designated Rule 30(b)(6) witness. The Court previously found that the proceedings on September 9, 2021 were improper as the witness repeatedly failed to answer questions posed, read lengthy non-responsive answers from a 91 page Outline (sometimes the "Outline") prepared by Plaintiffs' counsel, and that a second day of deposition was proper. The parties have now submitted their respective positions regarding the second day of the 30(b)(6) deposition. In preparation for this Order, the Court read the entirety of the September 9, 2021 30(b)(6) deposition transcript, reviewed the Outline, and reviewed the parties respective position.

I.      **Discussion**

 A. <u>The Law</u>.

 The Court begins its discussion with the purpose and obligations underlying Fed. R. Civ. P. 30(b)(6), which were thoroughly discussed by Magistrate Judge Peggy Leen (Ret.) in *Great American Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534 (D. Nev. 2008). The purpose of Rule 30(b)(6) "is to streamline the discovery process." *Id.* at 538 *citing Resolution Trust Corp. v. Southern Union Co., Inc.*, 985 F.2d 196, 197 (5th Cir. 1993). This Rule "serves a unique function in allowing for a specialized form of deposition." *Id. citing Sprint Communications Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D. Kan. 2006). "The Rule 'gives the corporation being deposed more control by allowing it to designate and prepare a witness to testify on the corporation's behalf.'" *Id. quoting U.S. v. Taylor*, 166 F.R.D. 356, 360 (M.D. N.C. 1996). Rule 30(b)(6) "is a discovery device employed by the examining party 'to avoid the bandying by corporations where individual officers disclaim knowledge of facts clearly known to the corporation.'" *Id.* (certain internal quote marks omitted).

 Rule 30(b)(6) imposes burdens on the party taking the deposition as well as the party that must be prepared to appear at deposition. "The party seeking discovery through a Rule 30(b)(6) deposition is required to describe 'with reasonable particularity the matters on which examination is requested.'" *Great American*, 251 F.R.D. at 538 *citing* Fed. R. Civ. P. 30(b)(6). Once a party is served with a 30(b)(6) deposition notice, "the responding party is required to produce one or more witnesses knowledgeable about the subject matter of the noticed topics." *Id. citing Marker v. Union Fidelity Life Insurance Company*, 125 F.R.D. 121, 126 (M.D. N.C. 1989). The party producing the corporate representative "'represents the knowledge of the corporation, not of the individual deponents.'" *Id. citing Taylor*, 166 F.R.D. at 361; *Hyde v. Stanley Tools*, 107 F.Supp.2d 992 (E.D. La. 2000); *Sprint Communications Co.*, 236 F.R.D. at 527. The appearing corporation must produce "a witness who is knowledgeable in order to provide 'binding answers on behalf of the corporation.'" *Id. quoting Starlight International, Inc. v. Herlihy*, 186 F.R.D. 626, 638 (D. Kan. 1999). A Rule 30(b)(6) witness "is not required to have personal knowledge on the designated subject matter." *Id. citing Sprint Communications*, 236 F.R.D. at 528; *PPM Finance v. Norandal*, 297 F.Supp.2d 1072,

2

1085-86 (N.D. Ill., 2004); *Calzaturficio v. Fabiano Shoe Co., Inc.*, 201 F.R.D. 33, 37 (D. Mass. 2001).  If necessary, the corporation being deposed "has a duty to designate more than one deponent to respond to relevant areas of inquiry on the noticed topics."  *Great American*, 251 F.R.D. at 538-39 *citing Barron v. Caterpillar, Inc.*, 168 F.R.D. 175, 176 (E.D. Pa. 1996); *Starlight International*, 186 F.R.D. at 638 (corporation must produce "such number of persons as will satisfy the request").

But, well settled law holds that a Rule 30(b)(6) deposition is not a memory contest.  *Id*. at 539 *citing Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 150 (S.D.N.Y. 1997).  Nonetheless, "a corporation has 'a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter.'"  *Id. quoting Starlight International*, 186 F.R.D. at 639; *Dravo Corp. v. Liberty Mut. Ins.* Co., 164 F.R.D. 70, 75 (D. Neb. 1995) ("If the rule is to promote effective discovery regarding corporations, the spokesperson must be informed."); *In re: Vitamins Antitrust Litigation*, 216 F.R.D. 168, 172 (D. D.C. 2003), (the appearing corporation must produce one or more Rule 30(b)(6) witnesses who are thoroughly educated about the noticed deposition topics and facts known to the corporation or its counsel).

"The duty to produce a prepared witness on designated topics extends to matters not only within the personal knowledge of the witness but on matters reasonably known by the responding party." *Id. citing Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 137, 141 (D. D.C. 1998). Whether a corporation continues to employ a person who has knowledge on designated topics is irrelevant to preparation for a 30(b)(6) deposition. *Id. citing Taylor*, 166 F.R.D. at 361.  Instead, the corporation must prepare the designated witness through "documents, past employees, or other sources" including witness deposition testimony and deposition exhibits.  *Id. citing Taylor*, 166 F.R.D. at 361-62.

With respect to the burden of preparing a 30(b)(6) witness, "this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business."  *Id. citing Taylor*, 166 F.R.D. at 362; *Sprint Communications*, 236 F.R.D. at 528 (acknowledging compliance with Rule 30(b)(6) may be onerous but that the Rule's requirements "negate any possibility that an inquiring party will be directed back and forth from one corporate

representative to another, vainly searching for a deponent who is able to provide a response which would be binding on that corporation."). The Court in *Great American* also made clear that if during a 30(b)(6) deposition "it become apparent … that the designee … is unable to respond to relevant inquiry, … the responding party has a duty to designate an additional knowledgeable deponent." *Id.* at 540 *citing Marker*, 125 F.R.D. at 126; *Dravo Corp.*, 164 F.R.D. at 75; *Starlight*, 186 F.R.D. at 638; *Sony v. Soundview Technologies*, 217 F.R.D. 104, 112 (D. Conn. 2002).

        B.     Defendants' 30(b)(6) Topics and Newmark's Testimony.

Plaintiffs' 30(b)(6) deponent appeared for the deposition with a 91 page Outline in front of him that was prepared by Plaintiffs' counsel, as well as binders provided by his counsel. The 30(b)(6) witness testified he prepared for the deposition by reviewing "various documents related to the case, including sections of the asset purchase agreement and other documents that are referenced in the [O]utline." ECF No. 503-1 at 16. The deponent did not review the deposition notice (albeit the topics are in the Outline), the Second Amended Complaint or have conversations with anyone at Newmark. *Id.* at 16-17; 173. The deponent met with counsel for a total of approximately five hours, and spent an unspecified amount of time "over the weekend, or early in the week" prior to the deposition "sporadically" reviewing documents "when … [he] had time." *Id.* at 175.

Plaintiffs' Second Amended Complaint is 28 pages long with two exhibits comprising 116 additional pages. ECF Nos. 222, 224. The factual allegations cover approximately 12 pages followed by five causes of action. There is now a Third Amended Complaint that is 41 pages in length alleging six causes of action against Avison Young-Nevada, Mark Rose, Nevada Commercial Group ("NCG"), John Pinjuv ("Pinjuv") and Joseph Kupiec ("Kupiec"). ECF No. 540. The causes of action include tortious interference with contractual relations, two breach of contract claims, a claim for conspiracy, theft of trade secrets in violation of the Nevada Secrets Act, and Aiding and Abetting Breaches of Fiduciary Duty. *Id.* No one associated with this case would challenge that the allegations are serious and require complicated proof.

For purposes of this Order, the Court notes that topics in the 30(b)(6) deposition notice include, but are not limited to:

> 10.    Any Grubb clients Defendants allegedly appropriated and/or client agreements allegedly breached as a result of Defendants' actions, as alleged *in the Complaint*.

> 11.    As alleged *in the Complaint*, the "trade secrets" that Plaintiff [sic] claims Defendants misappropriated, including but not limited to: (i) the identity of each such trade secret, (ii) the economic value derived from such trade secrets; (iii) Your use of the alleged trade secrets; (iv) the money and effort expended by You to acquire, develop, and/or maintain the alleged trade secrets; (v) Your efforts to maintain confidentiality of the alleged trade secrets and the reasons for those efforts; and (vi) the extent to which the alleged trade secrets are known to persons outside of Plaintiff [sic], including, without limitation, Plaintiff's [sic] competitors, industry participants, or the public.

> 12.    Plaintiffs' contentions *in the Complaint*, including but not limited to: (i) Your basis to claim that "Defendants induced [NCG] to breach the Nevada [Affiliation] Agreement and the Confidentiality Agreement by offering [NCG] incentives that exceeded the minimum level of ethical behavior in the marketplace;" that Defendants "used dishonest, fraudulent, and unethical means to persuade and entice [NCG] and other Grubb & Ellis affiliates to breach their affiliate agreements"; (ii) Your basis to claim that "the compensation packages offered by Avison Young to former Grubb & Ellis brokers and employees, including but not limited to Kupiec, were designed to entice them to breach their brokerage contracts with Grubb & Ellis, ... and to steal and disclose Grubb & Ellis' trade secrets and confidential information to Avison Young"; (iii) Your basis to claim that NCG "would not have breached its contract but for Rose, Pinjuv, and the AY Defendants' wrongful conduct"; and (iv) the identity of each "Business Opportunity" that You allege Plaintiff was deprived of and/or that Defendants misappropriated or interfered with.

ECF No. 502-8 (emphasis added). These three topics are discussed on pages 64 through 91 of the Outline provided by counsel to the 30(b)(6) deponent. ECF No. 503-2 at 64-91. Topic 11 with sub-parts and sub-sub parts includes a 12 page list of "Trade Secrets Specific to the Nevada Litigation," identified by Bates numbers, that presumably were included in the binders provided by Plaintiffs' counsel to the deponent in preparation for his 30(b)(6) deposition. *Id.*

Referring to the Second Amended Complaint, Defendants first ask the 30(b)(6) deponent if, in accordance with a header that appears in that Complaint, Plaintiffs are alleging that Avison Young misappropriated the G&E Las Vegas office. ECF No. 503-1 at 17-18. After Plaintiffs contended this question was outside the scope of the topics listed in the deposition notice (an objection the Court finds not well taken given the subject matters quoted above), the deponent responded by

5

reading, verbatim, a non-responsive answer from the 91 page Outline. *Id*. at 22-23. When Defendants attempted to confirm the deponent read from the Outline, Plaintiffs repeatedly objected to the form of the question (not well taken) and asserting the question mischaracterized the deponent's testimony—an inaccurate contention given the deponent had not answered the question. Ultimately, the deponent would not respond to the question stating repeatedly that his "response was *based on* the [O]utline that's in front of" him. *Id*. at 24 (emphasis added). An exchange regarding the question of whether the deponent was reading from the Outline went on for several pages in the transcript. *Id*. 25-28. In sum, a simple question regarding whether Plaintiffs were asserting that Defendants misappropriated the G&E Las Vegas office was never answered over the 10 pages these exchanges occurred.

The second question asked by Defendants also involved the Second Amended Complaint. *Id*. at 29. On this occasion, Defendants asked what G&E clients Plaintiffs contend Kupiec, one of the named individual defendants, appropriated to Avison Young from G&E. *Id*. In response, the deponent again read from the Outline—this time covering approximately four full transcript pages. *Id*. at 30-33. The answer did not mention Kupiec's name. *Id*. Defendants attempted to ask the question again drawing objections to the form, and that Defendants were interrupting the deponent who was supposedly trying to answer the question. *Id*. at 35. Defendants asked the question again. *Id*. at 36. The deponent did not answer, but stated instead: "You don't want me to talk about the pages and pages of other clients that were misappropriated?" *Id*. at 36. When Defendants asked again what clients Kupiec appropriated, Plaintiffs objected as outside the scope of Topic 12 in the deposition notice. Topic 10 in the 30(b)(6) notice references clients Plaintiffs allege were appropriated by Defendants. Topic 12(iv) references "Business opportunities … Defendants misappropriated or interfered with."

At the bottom of page 37 of the deposition transcript the deponent identified one client targeted by Kupiec and one other individual. Defendants attempted to learn the basis for the contention that this client was appropriated by Avison Young, which drew objections based on form and, surprisingly, foundation (an odd objection for a 30(b)(6) witness on an identified topic in the

deposition notice).  *Id*. at 40.  When the deponent began to read an answer from the Outline and Defendants asked from what page the deponent was reading, this too drew an objection based on the form of the question.  *Id*. at 40-41.[1]

Defendants also asked the deponent if he could tell Defendants whether Avison Young ever signed any of the clients listed on page 19 of the Outline on which he was relying.  *Id*. at 41.  The question was pending for four minutes before the deponent explained he was trying to cross reference properties on page 19 of the Outline to the "laundry list of properties" that were allegedly stolen, which begins on page 54 and runs through page 63 of the Outline.  *Id*. at 41-42.  When Defendants sought the exact pages to which the deponent was referring, Plaintiffs again object to the form of the question.  Ultimately, the 30(b)(6) deponent stated he did not know if any of the clients listed on page 19 ended up at Avison Young.  *Id*. at 42.  The exact amount of time this took to get this answer is unclear, but it is clearly greater than four minutes.

There are numerous other examples of these types of exchanges in the deposition transcript:

- On page 54 of the transcript Defendant asked: "Under its affiliate agreement with NCG, do you know whether Grubb had any rights to commissions of NCG?" This drew objections to the form and because the question, supposedly, called for a legal conclusion.  The deponent responded that under the affiliate agreement, there were certain fees that were shared with G&E.  *Id*. at 54.  When Defendant asked "What fees?," the question was pending for more than six minutes before any answer was given.  *Id*. at 54-57.  The follow up question seeking more information was pending for more than five minutes before an answer was provided.  *Id*. at 55-59.

- On page 71 of the deposition transcript, Defendants asked the deponent if a list appearing in response to Interrogatory No. 3 (marked as Ex. 4) identified the specific documents that Plaintiffs contend are trade secrets.  ECF No. 503-1 at 71.  After Plaintiffs objected that this was outside the scope of the deposition notice Topic 11 (the Court disagrees), the deponent read a two and one-half page non-responsive answer.  *Id*. at 73-75.  When Defendants asked about the alleged misappropriation of G&E emails, the deponent again read from the Outline and stated, repeatedly, that there were hundreds of email taken.  *Id*. at 77-79.  When asked if Plaintiffs knew if any of the documents identified were allegedly taken by Defendants off of G&E's "eNet," Plaintiffs objected to the form, foundation, as asked and answered, and as outside the scope of the

---

[1]      The Court notes, as discussed below, Defendants are entitled to know what page, if any, the deponent(s) review, read, consult or in any way rely upon for any answer to a question asked.

deposition notice. *Id*. at 80. The response was non-responsive (*id*.) leading the question to be asked again, objections raised, and exchanges between counsel. *Id*. at 81-83.[2]

- On page 123, Defendants asked questions about the asset purchase agreement ("APA") beginning with an initial query as follows: "Does there exist anywhere a fully executed copy of the asset purchase agreement with all final schedules to it?"  ECF No. 503-1 at 123. The deponent responded by reading from the Outline, which, when transcribed, covered eight pages of the deposition transcript. *Id* at 123-131. While the response mentioned section 1.5 of the APA, which includes a list of all contracts to which the seller (G&E) is a party, and describes the assumption and rejection process (*id*. at 128-29), the eight-page answer did not state whether there is a fully executed copy of the APA with all schedules. *Id*. When Defendants sought an answer to the original question, objections were made (including asked and answered), leading finally, on page 133, to the statement by the deponent that "the relevant schedules are attached to the asset purchase agreement … filed with the court on March 5th, 2012." *Id*. at 133. It took 11 pages to get an answer to a fairly simple question.

- Defendants also asked about Topic 4 in the deposition notice that seeks identification of any listing agreements breached prior to the G&E bankruptcy. *Id*. at 133-34. After speaking about agreements other than listing agreements, and numerous objections, the deponent identified a single agreement on page 137 of the transcript that is not a listing agreement, but a property management agreement. *Id*. at 138. On page 139, a listing agreement for "Green Valley" was identified, but the deponent never answered the question regarding when this listing agreement was supposedly breached. *Id*. at 139-141. With respect to a client identified as 2410 Fire Mesa School of Medicine, the deponent could not state whether Plaintiffs had an agreement that was ever breached. *Id*. at 141-147.

- Defendants also asked questions regarding Topic 12 identified as the basis for Plaintiffs' claim that Defendants induced NCG to breach its affiliate and confidentiality agreements by offering NCG incentives that exceeded ethical behavior in the marketplace. *Id*. at 153-54. In response to this question, the deponent read content from the Outline regarding Kupiec and Mark Rose that was not responsive to the question. *Id*. at 154. When Defendants tried to focus the deponent on the question asked, Plaintiffs objected that Defendants was interrupting. *Id*. at 155-56. As Defendants tried to obtain a response to what incentives Plaintiffs contended were offered (after the deponent read the non-responsive answer—*id*. at 157-160), Plaintiffs objected stating asked and answered. *Id*. at 161. This exchange went on with the deponent never answering the question regarding incentives. *Id*. 161-62.

- Topics 2 and 6 in the deposition notice were raised at the tail end of the deposition. With respect to Topic 2, Plaintiff read an answer from the Outline that filled approximately two and one-half pages of the transcript. *Id*. at 166-

---

[2]   The Court agrees that the G&E "eNet" is not mentioned in the 30(b)(6) deposition notice. Topic 11 refers to the Trade Secrets Plaintiffs allege Defendants appropriated and efforts to maintain trade secrets as secret. Thus, where and how trade secrets are stored would appear to be something Plaintiffs would want to demonstrate and that would reasonably fall within Topic 11. That said, the Court understands why Plaintiffs may not have anticipated this particular subject matter.

68. Defendants followed up asking if Schedule B to the bankruptcy filing was amended. Plaintiffs objected as "asked and answered" pointing out that the deponent was appearing for Newmark not G&E. Plaintiffs did respond to this question. Topic 6 was briefly covered at pages 171 and 172 of the deposition transcript.

After this, Defendants adjourned the deposition objecting to the use of the Outline as a script and the "nonresponsive speeches" that prevented the examination of the witness as anticipated by Rule 30(b)(6). Defendants reserved all rights including continuation of the deposition at another time. Plaintiffs' objected to the characterization of the Outline as a script, said the materials provided to the deponent were within the confines of Rule 30(b)(6), and stated Plaintiffs would not agree to reopen the deposition. ECF No. 503-1 at 176-77. Defendants seek to reopen the 30(b)(6) deposition with respect to all but two topics previously listed. Plaintiffs contend Defendants waived their right to ask questions on Topics 1(B), 1(C), 5, 7, 10, 11(v), and 13. The Court finds no waiver of Defendants' right to ask questions regarding these topics. Defendants expressly reserved all rights to continue the deposition and, while Plaintiffs objected to this reservation of rights, the deponent's failure to be properly prepared and provide responses to many topics into which inquiries were made renders the objection without merit.

"If the designated deponent cannot answer … questions [regarding the subject matters listed in the 30(b)(6) notice], then the entity has failed to comply with its Rule 30(b)(6) obligations …. The entity has an affirmative duty to produce a representative who can answer questions that are both within the scope of the matters described in the notice and are 'known or reasonably available' to the corporation. Rule 30(b)(6) delineates this affirmative duty." *Postx Corp. v. Secure Data Motion, Inc.*, Case No. C 02-04483 SI, 2005 WL 767593, at *1 (N.D. Cal. Apr. 1, 2005) (internal citation and brackets omitted). Further, it is not enough that the 91 page Outline was prepared and documents associated therewith were provided to Newmark's 30(b)(6) deponent, the deponent, as a representative of the corporation, had the obligation to review and prepare for the testimony on the topics covered, which he clearly did not do. *San Diego Unified Port District v. TDY Industries, Inc.*, Case No. 03-cv-1146-B (POR), 2005 WL 8173285, at *3 (S.D. Cal. Nov. 21, 2005) *citing Calzaturficio S.C.A.R.P.A. S.P.A. v. Fabiano Shoe Co., Inc.*, 201 F.R.D. 33, 37 (D. Mass. 2001)

(finding the argument that the designee knew no more than what is in the documents already produced does not relieve the corporation of the duty to properly prepare the designee).

Based on the review of the entirety of Newmark's 30(b)(6) deposition transcript as well as the 30(b)(6) Deposition Notice, the Court Orders as follows:

1.    Newmark's 30(b)(6) deponent shall appear for an additional five hours of deposition by Defendants.  Time taken by Newmark to question its witness is not included in this five hour window.  Nor is any follow up by Defendants after Newmark asks questions, if any.

2.    The deponent may have the 91 page Outline and any other outline prepared for or by him and reviewed in preparation for the second day of deposition available at the deposition, but the witness may *not* read from any outline, whether verbatim or through a paraphrase of the contents, in response to any question asked unless the question seeks a list as a response and that list is contained in one of the outlines.[3]  If after a question is asked the deponent must pause to review any outline or any other materials in preparation to answer a question, which should be a minimal occurrence as the deponent ***must be prepared ahead of time for reasonably anticipated questions***, Defendants shall be entitled to add five minutes for each such occurrence to the five hours allotted for the second day of deposition.  If the deponent feels he must refer to an outline to respond to a question, the deponent must state that he cannot answer the question without referring to an outline, provide, without being asked, what he is searching for, and what page or pages (and any subsection) he reviewed to refresh his recollection leading to the answer to the question.  To avoid confusion, the need to refer to an outline should be the exception, not the rule.  That is, significantly less than half the questions asked should require review of an outline to answer. Stated simply, the Court finds the deponent was not properly prepared for deposition the first time he appeared.  The Court anticipates that counsel and the deponent will invest substantially more time in preparation for the second day of the deponent's 30(b)(6) deposition.  *A failure to properly prepare the deponent a second time may result in sanctions.*  If the witness does not know an answer and believes the corporation does not know the answer to a question, the witness is obviously permitted to state that on behalf of the corporation he does not know or words/meaning to that effect.[4]

---

[3]    If an additional outline is prepared for the second day of the 30(b)(6) deposition and such outline exceeds 10 pages, the amount of time Defendants have as a baseline for the continued deposition is automatically increased to six hours.

[4]    Plaintiffs argue that the topics on which the 30(b)(6) witness is to be deposed are incredibly broad, cover a long period of time, and diverse subjects leading, therefore, to the deponent's need for a memory aid during the deposition. Plaintiffs raise Topic 11 as a specific example of the inability to prepare any one or more witnesses for the deposition without significant aid.  *See infra* at 5 for Topic 11.  This Topic pertains to Plaintiffs' claims that its trade secrets were appropriated by Defendants, a key element of Plaintiffs' claims.  This is Plaintiffs' case.  It is Plaintiffs' obligation to prove all of the elements of all of the claims asserted.  A Rule 30(b)(6) deposition in a case of this nature is an essential tool for Plaintiffs and Defendants to share and obtain critical information about the case.  That one or more individuals could not be prepared to testify on the elements necessary to prove a misappropriation of trade secret claim is surprising at best.  Indeed, Plaintiffs were free to prepare more than one deponent to appear and testify to the 30(b)(6) topics agreed upon, which would have limited the amount of information one person needed to learn or keep at his/her/their fingertips. Perhaps there was someone more versed on bankruptcy issues or the property listing than the person who appeared. However, and irrespective of the topics, it was Plaintiffs' obligation to ensure one or more witnesses were prepared.

3.      Any additional outline prepared by counsel or the deponent and that was used by the deponent in preparation for the first day or is used by the deponent to prepare for the second day of his deposition, or that may be used to refresh the witness' recollection during the deposition, must be produced to Defendants no later than five court days before the deposition.

4.      If Plaintiffs identifies any witness, other than the witness who appeared on September 9, 2021, to appear at the second day of the 30(b)(6) deposition, Defendants are permitted a total of seven additional hours to conduct the second day of deposition.

5.      The parties may set a date for deposition and coordinate with the Court to ensure the Court's availability to resolve any issues that arise on that day.

6.      Defendants shall be entitled to inquire into Topics 1(B), 1(C), 3, 4, 5, 7, 10, 11, 12, and 13.

7.      Topic 1(A)—the existence and location of schedules to the APA—was responded to as available through the bankruptcy filings.  No additional questions are allowed except to confirm this is correct and whether Newmark is in possession of a copy of all of the same.

8.      Topic 2 was partially covered (after the deponent read a non-responsive answer from the Outline) at pages 169-172 at line 4.  These questions may not be repeated.  Additional questions related to Topic 2 may be covered.

9.      Topic 6—Nevada Affiliate Agreements including efforts by Newmark to review or renegotiate with the Reno Affiliate—was partially covered. Questions may not be repeated.  *See* ECF No. 503-1 at 171-73 (relating to whether anyone contacted Pinjuv after the bankruptcy filing).  Additional questions related to Topic 6 may be covered.

10.     All of the above applies to any witness who appears as a corporate representative of Newmark

C.      <u>Testimony of Defendants 30(b)(6) Witness.</u>

Defendants argue that two questions and the responses to those questions given by their 30(b)(6) deponent, which were identified as falling within Topics 5 and 6 in the deposition notice issued by Plaintiffs, fall outside the scope of these topics.  Topic 5 states: "Avison Young's Recruitment and Hiring of the Las Vegas Personnel."  Topic 6 states: "Avison Young's communication with Joe Kupiec regarding Kupiec's departure from Grubb & Ellis, employment by AY, the opening of an AY office in Las Vegas, and the recruitment of Grubb & Ellis brokers,

---

Plaintiffs were free to spend substantially more time than they did for the deposition.  Using an "aid" as just that, an "aid," and not as a script from which the deponent repeatedly reads non-responsive answers, may have been appropriate. Here, the deponent did not "refer" to the Outline, as Plaintiffs contend.  He used the Outline as a basis for his response to most every substantive subject raised.

independent contractors, employees, or affiliates."  The first question to which Defendants point the Court is as follows: **Q:** "And as you sit here today, can you recall any of the other individuals with whom you were considering opening the Las Vegas Office?"  This question does not fall within a reasonable reading of the subject matter of Topic 5.  Given that Topic 6 seeks to learn about communication with Kupiec regarding *his* involvement in the list that follows his name, the Court agrees that this is outside the subject matter of Topic 6 as well.  Defendants are not bound by the deponent's response to this question.

The second question to which Defendants point the Court is as follows: **Q:** "Did Avison Young discuss opening an office in Las Vegas with anyone else at Grubb & Ellis in 2010 other than Joe Kupiec?"  The Court agrees that this question falls outside of a reasonable reading of Topics 5 and 6.  Defendants are not bound by the deponent's response to this question.[5]

**II.    Order**

Based on the foregoing, IT IS HEREBY ORDERED that Defendants may take a second day of deposition of Plaintiff Newmark Group Inc.'s Rule 30(b)(6) deponent(s) consistent with the contents of this Order.

IT IS FURTHER ORDERED that the testimony of Defendants' 30(b)(6) deponent, in response to two questions posed during his deposition, as detailed above, does not bind Defendants.

DATED this 19th day of April, 2022.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

---

[5]      The Court notes that Plaintiffs did not object to Defendants' submission of the two questions above as outside the scope of Plaintiffs' 30(b)(6) deposition notice Topics 5 and 6.  *See* ECF No. 576-1 at 4.